**BERRY STERLING CORP., Plaintiff–Cross Appellant,**

v.

**PESCOR PLASTICS, INC., Defendant–Appellee.**

No. 96–1380.

United States Court of Appeals, Federal Circuit.

Sept. 3, 1997.

John M. Delehanty, O'Sullivan Graev & Karabell, LLP, New York City, argued, for Plaintiff–Cross Appellant. With him on the brief were Jack M. Kint, Jr. and Thomas S. Dean. Of counsel was Charles D. Ossola, Lowe, Price, LeBlanc & Becker, Alexandria, VA.

Robert A. Vanderhye, Nixon & Vanderhye P.C., Arlington, VA, argued, for Defendant–Appellee.

Before RICH, CLEVENGER, and BRYSON, Circuit Judges.

RICH, Circuit Judge.

Berry Sterling Corporation (Berry) appeals the judgment of the United States District Court for the Eastern District of Virginia granting Pescor Plastics, Inc.'s (Pescor) motion for summary judgment and invalidating U.S. Patent Des. No. 362,368 (the '368 patent) for functionality. We vacate and remand.

## BACKGROUND

The patented container design was apparently developed in response to an industry-wide solicitation by the Coca Cola Company requesting the development of a car cup for its "Coke to Go" program. In order to receive consideration, the cups had to meet the following criteria: (1) they had to have a 32 ounce capacity; (2) they had to have a spill-proof lid; (3) they had to fit in a majority of car cup holders; (4) they had to be short enough to fit under the valve of a soda dispenser; and (5) they had to have a low production cost.

Over the course of several months, Berry submitted three designs to Coca Cola Company executives. The first was a bi-level cup design which was apparently originally conceived by George Willbrandt (Willbrandt) in 1988. Although Coca Cola's representative found that it met the above-mentioned criteria for consideration and liked the concept of the bi-level design, he was not satisfied with its appearance. It was "too short, too squat, and too kind of square looking." Other Coca Cola executives also were dissatisfied with the cup's appearance, remarking that this model did not have enough "sex appeal" and was too "angular and square."

In response to this criticism, Berry submitted a second design, a cup with a narrower base, a rounder shoulder, and an increased overall height. Coca Cola Company executives provided additional criticism and, as a result, a third model was prepared, further rounding the shoulder transition. The progeny of this third model were the car cups produced for the "Coke to Go" program and are of the type used for promotional purposes by a multitude of fast food or "quick service" restaurants, convenience stores, sports arenas, and theme parks.

The application for the '368 patent was filed to protect the design of containers including this cup. It is a design for a contain-

er which will fit in a vehicle cup receptacle. The patent illustrates a bi-level container, the tapered and fluted lower portion, topped by a smooth and tapered upper portion more than two and one half times taller than the lower portion. A clearly defined "shoulder" transitions the lower portion to the upper portion. (See illustration infra.) A second illustrated embodiment includes the same bi-level container accompanied by a domed lid.

The '368 patent issued on September 19, 1995. Two days later, Berry sought to enforce the patent against Pescor and several other defendants, some of whom were also involved in designing cups suitable for the "Coke to Go" program. On the close of discovery and the eve of trial, Pescor moved for summary judgment on its defense of patent invalidity, based on obviousness and functionality. Berry cross-moved for summary judgment to dismiss the defense. The parties also filed other motions on validity and infringement issues. The district court granted Pescor's summary judgment motion for invalidity on grounds of functionality. The court considered, but did not decide, the other pending motions. Thus, the sole issue before us is whether the district court erred in granting summary judgment on the record invalidating the '368 patent because the overall design, as shown in the patent drawings, was dictated by the function of the article, and, if so, how.

## DISCUSSION

■ On appeal, we are not bound to give deference to the district court's grant of summary judgment, but must make an independent determination that the standards for summary judgment have been met. *Vas–Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1560, 19 USPQ2d 1111, 1114 (Fed.Cir.1991). Summary judgment is properly granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

To create a genuine issue of fact, the nonmovant must do more than present some evidence on an issue it asserts is disputed. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence [of the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11. (citations omitted). Indeed, "[s]ummary judgment is authorized where it is quite clear what the truth is," *Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1141, 229 USPQ 182, 186 (Fed.Cir. 1986), and the law requires judgment in favor of the movant based upon facts not in genuine dispute. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

■ In this case we are unable to make a determination as to whether the standards for summary judgment have been met, because the parties and the court have not elicited the appropriate factual underpinnings for a determination of invalidity of a design patent due to functionality. The parties and the court have treated the manufacturing specification for the "Coke to Go" program cup as providing limitations for the '368 patent. In reviewing the "undisputed facts" set forth in Pescor's brief, we note that paragraphs 1–7 are irrelevant to invalidity due to functionality because they promulgate limitations based on the specification of the "Coke to Go" program cup rather than the patented design. Paragraphs 8, 12, 13, and 15, are irrelevant because they relate to prior art considerations and obviousness, which are not at issue in this appeal.

A properly conducted patent analysis, be it for infringement or validity, necessarily requires construing the patent, and more specifically, the claim. *See Best Lock Corp. v.*

*Ilco Unican Corp.,* 94 F.3d 1563, 1567, 40 USPQ2d 1048, 1052 (Fed.Cir.1996) ("The validity of a patent must be evaluated based on what it claims...."); *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.,* 48 F.3d 1193, 1196, 33 USPQ2d 1925, 1927 (Fed.Cir.1995) (The court must look to the claims, not the commercial embodiment.); *Lund Indus., Inc. v. GO Indus., Inc.,* 938 F.2d 1273, 1275, 19 USPQ2d 1383, 1385 (Fed.Cir.1991).

The '368 patent claim is in the form required by rule: "The ornamental design for a container to fit a vehicle cup receptacle, as shown and described." *See* 37 C.F.R. § 1.153 (1996). The patent includes nine figures depicting two separate embodiments of the container. As can be seen from the exemplary Figure 3 of the patent, the patented design includes the following four discernible, possibly ornamental, features: (1) a rolled lip; (2) tapered upper portion; (3) a fluted lower portion; and (4) a rounded shoulder transition.

## FIG. 3

■ The district court imposed the limitations of the manufacturing specifications for the "Coke to Go" program cup on the underlying article of manufacture thereby unduly limiting the scope of the claimed design. After reciting the claim, the court stated

It is clear, however, that the design was dictated not only by the function of fitting the majority of car cup holders, but was also designed so that the cup was able to fit underneath the valve of a soda fountain and so that it could hold 32 ounces while retaining stability to minimize the danger of spilling.

There are, inter alia, no height or volume limitations, no requirements that the container fit in the majority of car cup holders, and no stability limitations imposed by the claim. The features forming the basis for the functionality analysis promulgated by the court are found in the commercial embodiment of the underlying article of manufacture. It should address the article in the claimed design, which means, realistically, the article and its configuration as shown in the drawings. Thus, we vacate and remand because the court cannot use the limitations of the commercial embodiment of the underlying article of manufacture to impose limitations on the scope of the design patent.

■ In the interest of judicial economy, we address two points raised by the parties with regard to the substance of the court's functionality analysis. First, the court erred in its analysis by failing to return to the overall appearance after purportedly analyzing each of the elements of the design. While analyzing elements of the design may be appropriate in some circumstances, the determination of whether the patented design is dictated by the function of the article of manufacture must ultimately rest on an analysis of its overall appearance. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1123, 25 USPQ2d 1913, 1917 (Fed.Cir. 1993). No such analysis was made or any explanation provided as to what, if any, feature was dictated by function.

■ Second, the district court acknowledged that there may well be alternative existing designs of cups similar to those claimed in the '368 patent, but apparently did not consider the alternative designs important to deciding whether the '368 patent is invalid for functionality. We have held

that "[w]hen there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *Id.* Berry argues that this language from *L.A. Gear,* and similar language from *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1563, 7 USPQ2d 1548, 1553 (Fed.Cir.1988), coupled with the existence of the alternative designs, save the '368 patent from the functionality challenge, and that the district court erred in not giving such effect to the alternative designs. The failure of the court to give dispositive effect to the existence of alternative designs in its validity analysis is not error. The presence of alternative designs may or may not assist in determining whether the challenged design can overcome a functionality challenge. Consideration of alternative designs, if present, is a useful tool that may allow a court to conclude that a challenged design is not invalid for functionality. As such, alternative designs join the list of other appropriate considerations for assessing whether the patented design as a whole—its overall appearance—was dictated by functional considerations. Other appropriate considerations might include: whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

We have considered the parties' other arguments and conclude that they are either unpersuasive or unnecessary for resolution of this appeal. We vacate and remand for further proceedings in accordance with this opinion.

*VACATED AND REMANDED.*