PHG TECHNOLOGIES, LLC, Plaintiff,

v.

The ST. JOHN COMPANIES, INC., Defendant.

No. 03:05–0630.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 26, 2007.

Lea Speed Hall and Adam S. Baldridge
of Baker Donelson Bearman Caldwell &

Berkowitz, PC, Memphis, TN, for Plaintiff PHG.

Robert Schroeder and Jennifer Phelps of Bingham McCutchen, LLP, Los Angeles, CA, for Defendant St. John Companies.

### MEMORANDUM

ROBERT L. ECHOLS, District Judge.

Pending before the Court are Defendant The St. John Companies, Inc.'s Motion For Summary Judgment Of Invalidity Under 35 U.S.C. § 102(b) (Docket Entry No. 209) and PHG Technologies, LLC's Motion For Partial Summary Judgment (Docket Entry No. 133), to which the parties have responded in opposition.

PHG Technologies, LLC ("PHG") brought this action against The St. John Companies, Inc. ("St.John") seeking to enforce its design patents on medical label sheets, U.S. Patent Des. No. 496,405 S ("the '405 patent") and U.S. Patent Des. No. 503,197 S ("the '197 patent"), and to protect its "EasyID" trademark. The Court entered a preliminary injunction against St. John and denied the parties' motions for partial summary judgment. *PHG Technologies, LLC v. St. John Companies, Inc.*, 2005 WL 3301601 (M.D.Tenn. Dec.5, 2005). In November 2006, the Federal Circuit vacated the preliminary injunction, ruling "based on the evidence of record at this preliminary stage" that PHG failed to meet its burden to prove likelihood of success on the merits on the question of patent validity. *PHG Technologies, LLC v. St. John Companies, Inc.*, 469 F.3d 1361, 1369 (Fed.Cir.2006). On PHG's motion, the Court dismissed St. John's counterclaims for unfair competition (Count XI), violation of the Tennessee Consumer Protection Act (Count XII), and unjust enrichment (Count XIII). *PHG Technologies, LLC v. St. John Companies, Inc.*, 459 F.Supp.2d 640 (M.D.Tenn.2006).

The parties have now filed cross-motions seeking summary judgment in their favor on various claims and counterclaims. The Court previously set forth numerous relevant facts in the above-cited prior opinions in this case and in the related case. *PHG Technologies, LLC v. TimeMed Labeling Sys., Inc.*, No. 3:05–1091 (M.D.Tenn.) ("*TimeMed* case"). In the interest of brevity, the Court will not restate facts here except as necessary to address the particular legal issues raised by the pending motions.

### I. STANDARD OF REVIEW

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c)." *Continental Plastic Containers v. Owens Brockway Plastic Prods., Inc.*, 141 F.3d 1073, 1076 (Fed.Cir. 1998). Material facts are those which may affect the decision so that the finding of such facts is relevant and necessary to the proceedings. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). If sufficient evidence is presented so that a reasonable fact finder could decide the question in favor of the non-moving party, a genuine issue is shown to exist. *Id.* The Court must believe the evidence submitted by the non-movant and draw all justifiable inferences in that party's favor. *Id.* The Court must assess the adequacy of the non-movant's response and determine whether the showing the non-movant "asserts it will make at trial would be sufficient to carry its burden of proof." *Id.*

### II. ANALYSIS

**A. St. John's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 102(b)**

St. John seeks summary judgment in its favor on the patent infringement claims

asserted against it by PHG in Counts I and II, and on St. John's corresponding declaratory judgment Counts I and II as stated in its counterclaim against PHG. St. John contends that PHG's design patents are invalid because label sheets having the configuration shown in the '197 and '405 patents were "on sale" more than one year prior to the critical date, September 14, 2001.

Patents are presumed to be valid. 35 U.S.C. § 282; *WMS Gaming, Inc. v. International Game Technology,* 184 F.3d 1339, 1355 (Fed.Cir.1999). To prevail St. John must demonstrate a lack of genuine dispute about material facts and show that the facts not in dispute clearly and convincingly demonstrate patent invalidity. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1358–1359 (Fed.Cir. 2001).

St. John's motion for summary judgment on patent invalidity is in all respects nearly identical to the motion for summary judgment on patent invalidity made in the *TimeMed* case. St. John relies on the opening briefs and supporting papers filed by TimeMed in the related case and makes those filings part of the record in this case. (Docket Entry Nos. 209, 130, 131 & 132.) St. John's Statement of Undisputed Facts in Support of Motion for Summary Judgment (Docket Entry No. 129), with the exception of minor stylistic and record citation revisions, is identical in substance to the Statement of Uncontested Facts in Support of Summary Judgment filed by TimeMed. (No. 05–1091, Docket Entry No. 88.)

After the Court denied TimeMed's motion for summary judgment on the issue of patent invalidity, the Court permitted St. John to file a Supplemental Memorandum (Docket Entry No. 213) in support of its summary judgment motion in this case. In the Supplemental Memorandum, St. John identifies two reasons why its motion

for summary judgment should be considered independently and decided differently from TimeMed's motion. First, St. John contends that PHG cannot rely on the experimental use exception to overcome a *prima facie* case of patent invalidity because (a) PHG principal Brian Moyer at his deposition in this case "admitted that he did not know what happened to all 4,000 label sheets [fabricated by Ward/Kraft] and could not say they were not sold[ ]" and (b) St. John contends the label sheets were put on sale by Ward/Kraft; therefore, no amount of experimentation by PHG subsequent to the Ward/Kraft offer for sale could retroactively ameliorate the legal effect of Ward/Kraft's offer for sale. Second, St. John contends that this Court erroneously relied on *Tone Bros., Inc. v. Sysco Corp.,* 28 F.3d 1192 (Fed.Cir.1994), in the *TimeMed* case, but in any event *Tone Bros.* does not apply here because St. John's on-sale defense relies on the acts of the third party, Ward/Kraft, not PHG. Thus, according to St. John, for *Tone Bros.* to apply by analogy in this case, PHG must present evidence from which a jury could reasonably find that Ward/Kraft was experimenting, thereby negating the effect of Ward/Kraft's offer for sale or sale of label sheets to PHG.

St. John's initial attack on the testimony of Brian Moyer bears little fruit. A fair reading of the deposition transcript excerpt cited does not reveal that Moyer "admitted he did not know what happened to all 4,000 label sheets and could not say they were not sold[.]" The gist of the testimony is much different. St. John's counsel asked Moyer:

Q. You didn't sell any of the first 4,000.

A. No.

Q. And you didn't sell any of the second 4,000; correct?

A. Not that I recall.

(Docket Entry No. 177–3, Moyer Depo. at 60–61.) Taking this testimony in the light most favorable to PHG, St. John has not produced evidence in support of its summary judgment motion establishing that Moyer commercially sold to customers any of the first 8,000 label sheets he obtained from Ward/Kraft.

St. John next requests that the Court focus on Ward/Kraft's actions prior to the critical date, rather than PHG's actions. St. John urges the Court to hold that Ward/Kraft sold or offered to sell label sheets to PHG, thus rendering PHG's design patents invalid, and that Ward/Kraft did not engage in experimental use which would negate its sale or offer to sell. The Court fully examined the entire course of conduct between Ward/Kraft and PHG in its prior opinion entered in the *TimeMed* case. There, the Court explained why, taking the facts in the light most favorable to PHG, neither the actions of Ward/Kraft nor PHG amounted to commercial sales or offers to sell. The Court sees no reason to reiterate that entire analysis here. In rejecting St. John's contentions, the Court incorporates by reference and relies on its prior analysis in *PHG Technologies, LLC v. TimeMed Labeling Sys., Inc.*, 2006 WL 2670967 (M.D.Tenn. Sept.18, 2006).

As the Court stated in the *TimeMed* case, the facts show that Moyer made the disclosures concerning the design patents to Ward/Kraft with the expectation of confidentiality and "both PHG and Ward/ Kraft understood that the first samples were fabricated as 'test runs.'" *Id.* at **3, 11. The Court also observed that the evidence showed PHG ran the sample label sheets Ward/Kraft manufactured through various laser printers to see how the product would perform before PHG contracted with Ward/Kraft in October 2000 to mass-produce the label sheets for commercial sale to customers. *Id.* at *11. Thus, the Court held that PHG was entitled to the "small inventor" exception under *Brassel-*

*er, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 891–892 (Fed.Cir.1999).

The Court believes that it would be ignoring the requirements of law if it focused solely on the fact that Ward/Kraft did not conduct any experimentation. In *Electromotive Div. of Gen. Motors Corp. v. Transportation Sys. Div. of Gen. Elec. Co.*, 417 F.3d 1203, 1212–1214 (Fed.Cir.2005). the Federal Circuit identified thirteen (13) objective factors to consider in determining "whether pre-critical date activities involving the patented invention—either public use or sale—were primarily experimental and not commercial." These factors are: "(1) the necessity for public testing; (2) the amount of control over the experiment retained by the inventor; (3) the nature of the invention; (4) the length of the test period; (5) whether payment was made; (6) whether there was a secrecy obligation; (7) whether records of the experiment were kept; (8) who conducted the experiment; (9) the degree of commercial exploitation during testing; (10) whether the invention reasonably required evaluation under actual conditions of use; (11) whether testing was systematically performed; (12) whether the inventor continually monitored the invention during testing; and (13) the nature of the contacts made with potential customers." *Id.* at 1213. The list is not exhaustive and not all factors apply in a particular case. *Id.*

■ Here, the evidence suggests it was necessary for PHG to know if its patented design would work when reduced to practice on laser medical label sheets. Thus, PHG reasonably required testing to evaluate the label sheet design under actual conditions of use. Ward/Kraft knew a limited number of labels were being produced solely for testing purposes. As stated above, Moyer testified he disclosed the patented designs to Ward/Kraft with the expectation of secrecy.

As the second factor emphasizes, the focus is on the inventor and the amount of control the inventor exerts over the experiment. Evidence indicates that PHG inventors, Brian Moyer and Thomas Stewart, and PHG employees maintained control over the use of the label sheets as the sheets were tested in various laser printers under conditions similar to expected commercial use. The inventors continually monitored the label sheets during testing. The testing period covered a short period of time, and PHG paid Ward/Kraft to fabricate the samples, although not the full amount Ward/Kraft sought on the first 4,000 labels. According to Moyer's testimony, testing was conducted systematically, and records of the experiments were kept because Moyer sent Ward/Kraft a memorandum outlining the problems with the first boxes of label sheets. There is no evidence of any contact with potential customers during testing and no evidence of commercial sales or offers to sell to customers during testing. Thus, consideration of the evidence in light of the applicable objective factors and with a view most favorable to PHG tends to show that PHG's and Ward/Kraft's pre-critical date activities involving the patented designs were primarily experimental and not commercial. *See id.* at 1213.

Finally, the Court does not believe that its discussion of the *Tone Bros.* case in the *TimeMed* opinion, along with *Continental Plastic Containers v. Owens Brockway Plastic Prods., Inc.,* 141 F.3d 1073, 1079 (Fed.Cir.1998), was erroneous. *TimeMed Labeling Sys., Inc.,* 2006 WL 2670967 at *12. Moreover, as *Electromotive Div. of Gen. Motors Corp.,* 417 F.3d at 1212–1214 reveals, the focus must remain on PHG as the inventor, not on Ward/Kraft the supplier. But even if the focus shifts to Ward/Kraft, as St. John contends, the result is no different. In the *TimeMed* opinion, this Court discussed *Continental Plastic Containers,* 141 F.3d at 1079–1080, in which the Federal Circuit stated that, even if it extended *Tone Bros.,* a "public use" case, to the "on-sale" context, there was no nexus in that case between the alleged experimentation and the sale because Continental, the manufacturer, sold juice bottles to the inventor only for commercial exploitation, not for experimentation by the inventor. *TimeMed Labeling Sys., Inc.,* 2006 WL 2670967 at *13. This Court also pointed out that in *Continental Plastic Containers,* as in *Brasseler,* the Federal Circuit stated Continental did not present "a case in which Continental sold a discrete number of the bottles to L & A Juice so that L & A Juice might experiment on them to ascertain whether they were suitable for a particular purpose." *Id. See also Special Devices, Inc. v. OEA, Inc.,* 270 F.3d 1353, 1356 (Fed.Cir.2001). St. John does not address this discussion. Thus, St. John's motion for summary judgment on PHG's Counts I & II and St. John's Counterclaim Counts I & II will be denied.

## B. PHG's Motion For Partial Summary Judgment

PHG moves for summary judgment in its favor on several grounds. The Court will consider each ground in turn.

### 1. Patent validity

PHG asserts that its patents are valid because the designs are ornamental, not functional, and the patents were not invalidated by an on-sale bar. Thus, PHG claims it is entitled to summary judgment on the issue of patent validity.

### a. Whether the patented designs are ornamental or functional

PHG contends that its '405 and '197 design patents are valid because the designs are primarily ornamental, not functional, as the Court previously found when

it granted PHG's motion for a preliminary injunction.[1] St. John opposes summary judgment asserting that (1) the patents are invalid because PHG's design copied the upper nine rows of labels from James Riley's PLS–103 and the two lower rows of wristband labels in PHG's design are primarily functional, not ornamental; and (2) the patented label sheet configuration is functional because it is needed to make use of the software PHG sells to customers. PHG disagrees with St. John's contentions.

■ Title 35 U.S.C. § 171 provides that a patent may issue to "[w]hoever invents any new, original, and ornamental design for an article of manufacture[.]" There is no functionality requirement in obtaining a design patent. *See id.; Continental Plastic Containers,* 141 F.3d at 1079. Thus, once issued, a design patent is entitled to a presumption of validity. 35 U.S.C. § 282. The burden to establish invalidity of the patent rests on the party asserting invalidity. *Id.*

■ The Court addressed the issue of patent invalidity when it granted PHG's motion for a preliminary injunction and ruled that PHG had shown a likelihood of success on the merits of its claim that its designs are primarily ornamental, not functional. *PHG Technologies, LLC,* 2005 WL 3301601 at **4–6. "Whether a patented design is functional or ornamental is a question of fact." *PHG Technologies,*

*LLC,* 469 F.3d at 1365. The Federal Circuit vacated the injunction "based on the evidence of record at this preliminary stage[.]"[2] *Id.* at 1369. Thus, the appellate court's statement makes clear that this Court, following discovery and on motion for summary judgment, may reconsider the issue based on the factual record as it currently stands.

■ A design patent concerns the appearance of an article of manufacture, and it protects the nonfunctional aspects of an ornamental design as shown in the patent. *See Seiko Epson Corp. v. Nu–Kote Int'l, Inc.,* 190 F.3d 1360, 1368 (Fed.Cir.1999). The design need not be aesthetically pleasing; the "ornamental" requirement means that "the design must not be governed solely by function, that is, this is not the only possible form of the article that could perform its function." *Id.* If the patented design is primarily functional rather than ornamental, the patent is invalid. *Power Controls Corp. v. Hybrinetics, Inc.,* 806 F.2d 234, 238 (Fed.Cir.1986). The design of a useful article "is deemed to be functional when the appearance of the claimed design is 'dictated by' the use or purpose of the article." *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1123 (Fed. Cir.1993).

A design may embody functional features, however, and still be patentable. There is a distinction "between the func-

1. Despite PHG's request that the Court uphold its prior findings at this later stage of the litigation, the Court cannot do so. The Court's previous factual findings were made following an evidentiary hearing on PHG's motion for a preliminary injunction. Presently before the Court is PHG's motion for summary judgment. As PHG knows, different standards apply in evaluating the evidence placed in the summary judgment record before the Court, and the Court is not permitted to make factual findings in the summary judgment context.

2. The Federal Circuit held that PHG did not show a likelihood of success on the merits because it did not offer testimony refuting the assertions of St. John's CEO, Adam Press, that functional considerations dictated the design, "specifically the 'novel feature' of the differently-sized labels being placed at the bottom of the sheet." *Id.* at 1368. The court also believed that this Court did not make an explicit finding "on whether the alleged alternatives are in fact functionally equivalent (i.e., that the alternatives do not adversely affect the utility of the medical label sheet)[.]" *Id.* at 1367.

tionality of an article or features thereof and the functionality of the particular design of such article or features thereof that perform a function." *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563 (Fed.Cir.1988). If that were not true, it would be impossible to obtain a design patent on a utilitarian article of manufacture or to obtain design and utility patents on the same article. *Id.*

■ The Federal Circuit stated in *PHG Technologies, LLC*, 469 F.3d at 1366:

"[T]he determination of whether the patented design is dictated by the function of the article of manufacture must ultimately rest on an analysis of its overall appearance." *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed.Cir.1997). Our cases reveal a "list of ... considerations for assessing whether the patented design as a whole—its overall appearance—was dictated by functional considerations," including: whether the protected design represents the best design; *whether alternative designs would adversely affect the utility of the specified article;* whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function. *Id.* at 1456 (emphasis added). In particular, we have noted that "[t]he presence of alternative designs may or may not assist in determining whether the challenged design can overcome a functionality challenge. Consideration of alternative designs, if present, is a useful tool that may allow a court to conclude that a challenged design is not invalid for functionality." *Id.* "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose."

*Roscof, Inc. v. Mirror Lite Co.]*, 304 F.3d [1373,] 1378 [Fed. Cir.2002]. This excerpt from the Federal Circuit's opinion confirms this Court's previous conclusion that it cannot use the limitations of the commercial embodiment of the underlying article of manufacture to impose limitations on the scope of the design patent. *See Berry Sterling Corp.*, 122 F.3d at 1455.

PHG identifies the ornamental features of its design as the different sizes of labels and their placement on the sheet. The testimony at the preliminary injunction hearing revealed there are a multitude of ways to arrange different sizes of labels on an 8 1/2″ × 11″ sheet. Brian Moyer testified that PHG considered various arrangements for medical label sheets and settled on the design ultimately patented because it had "the best flow and look." He reiterates this testimony in an Affidavit supporting the summary judgment motion. (Docket Entry No. 149, Moyer Aff. ¶ 12.) The prior art identified by the patent examiner revealed earlier design patents that were issued for the ornamental design of a paper sheet or for the ornamental arrangement of labels on a sheet (Prelim. Inj. Hr'g, Plaintiff's Collective Ex. 1 at ′654, ′044, ′404, ′933, ′264, ′031), but the novel features of PHG's Medical Label Sheet, particularly the placement of various sizes of labels at the bottom of the sheet, distinguished PHG's ornamental design from the prior art, resulting in issuance of PHG's design patents ′405 and ′197.

St. John previously suggested in connection with the preliminary injunction motion that PHG's placement of the different-sized labels was driven purely by function in label use. St. John relied on the Affidavit and preliminary injunction hearing testimony of its CEO, Adam Press. The Federal Circuit quoted from the Press Affidavit as follows:

The labels for use on the wristbands themselves are located on the bottom two rows of the sheet as these are usually the first labels used when a patient is admitted to a medical facility. The lower right hand corner is the easiest location for a right-handed user to remove the label as it is flush to an edge and unencumbered by a file or binder clip along the top or left hand margins. By placing the labels for the wristbands at the bottom of the page, the subsequent removal of additional labels adjacent to the removed label is facilitated.

*PHG Technologies, LLC,* 469 F.3d at 1367 (quoting Press Aff. ¶ 5.d.).[3] The Federal Circuit determined:

Mr. Press's affidavit constitutes evidence that alternative designs, which do not include the "novel feature" of PHG's design—the placement of various sizes of medical labels at the bottom of the sheet—would adversely affect the utility of the medical label sheet. It articulates a clear functional reason why the use and purpose of the article of manufacture dictated that the "wristband" labels be located at the bottom of the sheet.

*Id.* This was in contrast to PHG's preliminary injunction evidence that Brian Moyer and Thomas Stewart chose the patented designs because they had "the best flow and look." *Id.* at 1368. The appellate court ruled that PHG failed to show a likelihood of success on the merits because "PHG did not offer testimony refuting the assertions made in Mr. Press's affidavit—

that functional considerations dictated the medical label design, specifically the 'novel feature' of the differently-sized labels being placed at the bottom of the sheet." *Id.* The court distinguished the case from *L.A. Gear* where "the patentee introduced evidence indicating that 'a myriad of athletic shoe designs' could achieve the same functions that were achieved by the patented designs and '[i]t was not disputed that there were other ways of designing athletic shoes to perform the functions of the elements of the [patented] design.' 988 F.2d at 1123." *Id.*

St. John apparently no longer relies on the Press Affidavit and testimony as neither the Affidavit nor an excerpt of the preliminary injunction hearing testimony is appended in support of St. John's opposition to summary judgment. However, PHG provides the testimony of an expert witness, Amy Sharp, who opined:

It is my expert opinion that the Patented Designs are primarily ornamental and that the arrangement of the labels on the sheet contained in the Patented Designs has to do only with their look and appearance. It is also my expert opinion that the Patented Designs are not primarily functional. The bottom two rows of labels in the Patented Design could have been placed anywhere on the label sheet design .... the Patented Designs are not primarily functional but instead are arranged to have the most aesthetic appeal, and thus are primarily ornamental. Indeed, I creat-

---

**3.** Although the Federal Circuit took this Court to task for not addressing the Press Affidavit in its preliminary injunction decision, the Court specifically referenced Mr. Press' similar testimony given at the preliminary injunction hearing:

According to Press, St. John utilized the same design for a medical label sheet as PHG because function is best served in doing so. St. John placed labels for adult and pediatric wristbands at the bottom of the

label sheet, as did PHG, because a wristband label logically is removed first when admitting the patient to the hospital. Moreover, the wristband label is easier to remove from the backing sheet when it is placed at the bottom edge. Chart labels are arranged in three rows of nine starting at the top of the sheet because the die cuts are easier and cheaper to make.

*PHG Technologies, LLC,* 2005 WL 3301601 at *3.

ed some designs on which the same labels are on the sheet, but the labels are oriented differently from the Patented Designs, showing that the label layout in the Patented Designs *cannot* have been primarily functional (See Collective Exhibit "B"). One of these draft layouts has the labels turned 90° from the layout of the Patented Designs. The advantage of this layout is that more labels can be obtained from a single sheet of 8½″ × 11″ label stock. It would function as a label sheet just as well as a label sheet bearing the Patented Designs.

(Docket Entry No. 260–9, Expert Report of Amy Sharp at 3–4.) Thus, as in *L.A. Gear*, 988 F.2d at 1123, PHG has come forward with evidence in support of its summary judgment motion that a myriad of medical label sheet designs could achieve the same functions that are achieved by the patented designs; that is, alternatives do not adversely affect the utility of the medical label sheet. *See PHG Technologies, LLC*, 469 F.3d at 1367. This evidence suggests that PHG's patented designs are primarily ornamental. Because St. John, the non-moving party, has not produced any evidence contradictory to Ms. Sharp's expert opinion, St. John has not shown there is a genuine issue of material fact for trial and has not carried its burden to show by clear and convincing evidence that the patented designs are functional, thus rendering the patents invalid. *See Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378–1379 (Fed.Cir.2002) ("Mirror Lite has not shown by clear and convincing evidence that there are no designs, other than the one shown in Rosco's 357 patent, that have the same functional capabilities as Rosco's oval mirror."); *Continental Plastic Containers*, 141 F.3d at 1079.

Since issuance of the Federal Circuit's opinion, St. John has shifted gears. It now focuses upon the disclosure in the *TimeMed* case that Brian Moyer pat-

terned PHG's patented designs on the PLS–103, a laser label sheet of thirty labels which PHG had been purchasing from James Riley's company, Riley, Barnard & O'Connell ("RB & O"), and selling to PHG customers. *PHG Technologies, LLC v. TimeMed Labeling Sys., Inc.*, 2006 WL 2052701 at *3–4 (M.D.Tenn. July 21, 2006). Based on evidence presented at the evidentiary hearing on a motion to correct inventorship, the Court found "that Moyer and Stewart copied all of the elements of the PLS–103 except for the new die cuts in the bottom two rows of the design depicted in the '405 and '197 patents and reduced to practice in the 20–101AW." *Id.* at *4. The Court specifically noted that "Stewart conceded at his deposition that Moyer incorporated the design of the upper twenty-seven (27) labels of the PLS–103 into the 20–101 AW. (Stewart Depo. at 73–74.)" *Id.* The Court further found:

> While there may have been, as Moyer testified, many label sheets with holes punched in them available in the market at the time Moyer and Stewart designed the 20–101 AW in 2000, Moyer and Stewart did not adopt the elements of punched holes and a pattern adhesive because those elements were common knowledge in the marketplace. Rather, Moyer and Stewart adopted the features because they were the hallmark of the PLS–103, and the PLS–103 had been a successful product for PHG.

*Id.*

St. John contends that, because the facts now undisputedly show that James Riley originated most of PHG's patented design as part of the PLS–103 label sheet, Moyer's and Stewart's contribution to the patents-in-suit consists solely of the substitution of two rows of wristband labels for the bottom row of Riley's chart labels on the PLS–103. St. John asserts that PHG's "patents can be valid only if this small

change in and of itself meets the ornamentality standard ... if the difference between the prior art PLS–103 and the patented design is 'primarily functional' the patents must be invalid." (Docket Entry No. 257, Supp. Memorandum at 5.)

St. John further reasons that "[o]nce the issue is properly framed in this way, the invalidity question has only one possible answer because of [PHG's] EasyID software and its functional requirements." (Id.) St. John presents deposition testimony of Thomas Stewart confirming that "[w]hen a hospital uses EasyID software to drive its printers to print label sheets ... those label sheets have to have the configuration shown" in the patented design unless the software is modified. (Docket Entry No. 257, Ex. 5, Stewart Depo. at 63.) St. John also points to the testimony of Brian Moyer, who stated that, to his knowledge, PHG had not helped any customer modify PHG's software after sale because "[w]e want to sell them our labels." (Docket Entry No. 257, Ex. 3, Moyer Depo. at 88–89.)

From this testimony, St. John suggests that "the fact that label sheets of the patented configuration are needed to fully make use of the EasyID software hospitals have purchased from [PHG] compel[s] the conclusion that the label sheet configuration is functional[ ]" as a matter of law, not ornamental. (Docket Entry No. 257, Supp. Memorandum at 6.) "The labels must be positioned where the printer is programmed to print. The wristband labels cannot be moved, as [PHG] has proposed, to form a functionally equivalent alternative design." (Id. at 7.) According to St. John, any alteration of the patented design PHG might propose would, in the words of the Federal Circuit, adversely affect the utility of the specified article such that the alteration would not truly be an "alternative" within the meaning of case law.

St. John states that "[t]here can be no doubt that the need to employ a particular patented design for purposes of compatibility with a complementary product renders that design functional and precludes valid design patent protection." (Id.) Relying on Best Lock Corp. v. Ilco Unican Corp., 94 F.3d 1563, 1566 (Fed.Cir.1996), St. John contends the configuration of PHG's label sheet is dictated solely by functional concerns because of the requirements of PHG's EasyID software, just as "[a]ny aesthetic appeal of the key blade design shown in the '636 patent" at issue in Best Lock Corp. was "the inevitable result of having a shape that it dictated solely by functional concerns." Because alternative designs would adversely affect the utility of the label sheet design, such design must be primarily functional, not ornamental.

■ A design patent protects the nonfunctional aspects of an ornamental design seen as a whole and as shown in the patent. Amini Innovation Corp. v. Anthony California, Inc., 439 F.3d 1365, 1370 (Fed.Cir.2006). Like PHG, the Court believes that St. John impermissibly seeks

> to narrow the scope of PHG's design patent rights by imposing arbitrary requirements associated with the commercial product such as that the label sheets be used in a specific way (with PHG's software) or that the label sheets must be of a particular size (8 ½ × 11) or that the labels on the sheet must be a specific dimension or that the label sheets be made of a specific material (laser label sheets). However, none of these arbitrary limitations are specified in the patents and thus none are part of or limitations on the patent rights granted to PHG.

(Docket Entry No. 134, PHG's Memorandum at 4.) A design patent has almost no scope, and the claim at bar is limited to

what is shown in the application drawings. *See Elmer v. ICC Fabricating, Inc.,* 67 F.3d 1571, 1577 (Fed.Cir.1995). " '[T]he determination of whether the patented design is dictated by the function of the article of manufacture must ultimately rest on an analysis of its overall appearance.' " *PHG Technologies, LLC,* 469 F.3d at 1366 (quoting *Berry Sterling Corp.,* 122 F.3d at 1455.) The drawings in the '405 and '197 patents affirm that it is the overall design of the medical label sheet that is patented—not just the details of its ornamentation. *Amini,* 439 F.3d at 1371.

█ In *Berry Sterling Corp.,* 122 F.3d at 1455, the court noted the design patent for an "ornamental design for a container to fit a vehicle cup receptacle" contained "no height or volume limitations, no requirements that the container fit in the majority of car cup holders, and no stability limitations imposed by the claim." As in *Berry Sterling Corp.,* in this case PHG has presented evidence that the design patents include no limitations as to the size of the label sheet, no requirement that the label sheet fit in a standard printer or be made from specific materials such as laser stock, and no specification that the label sheet be able to run through a high temperature laser printer. Thus, under *Berry Sterling Corp.,* the Court is not to consider whether the patented designs can be used with any particular software or printer because there are no such limitations on the scope of PHG's design patents. Thus, as a matter of law, St. John cannot demonstrate that PHG's design patents are invalid on the ground that the labels must be positioned specifically to work in combination with PHG's computer software.

The Court previously discussed above evidence that PHG's design is not solely dictated by its function because there were alternative designs available for the article of manufacture. *See Best Lock Corp.,* 94 F.3d at 1566; *Rosco, Inc.,* 304 F.3d at 1378. Also, the evidence shows that Moyer and Stewart arrived at this particular design because it had the "best flow and look," and at least some of PHG's customers use the 20–101AW label sheet without simultaneous use of PHG's protected software or a printer. For these reasons, *Best Lock Corp.* does not control here, and St. John's opposition to PHG's summary judgment motion must fail.

### b. The on-sale bar

The Court discussed above in connection with St. John's motion for summary judgment the issue of an on-sale bar. For the reasons previously stated, the Court concludes that St. John has failed to present sufficient clear and convincing evidence to create a genuine issue of material fact for trial on whether Ward/Kraft or PHG placed on sale before the critical date medical label sheets embodying the patented design. Accordingly, the Court concludes that PHG is entitled to summary judgment on this issue as the design patents are not invalid due to an on-sale bar.

The Court notes that St. John included in its Combined Memorandum in Opposition to PHG's Motion for Summary Judgment and Reply Brief in Support of St. John's Motion for Summary Judgment (Docket Entry No. 210) an argument that PHG's patents are invalid due to the "public use" statutory bar of 35 U.S.C. § 102(b). PHG did not address the "public use" statutory bar as a reason why its design patents are valid. Thus, the Court sees no reason to address St. John's discussion of the issue in connection with PHG's motion for summary judgment. The Court also will not address the "public use" statutory bar with regard to St. John's own motion for summary judgment because St. John raised the issue for the first time in a reply brief, yet St. John could have raised the issue in its opening

brief and given PHG an opportunity to respond. The Court concludes that St. John's asserted "on-sale" and "public use" defenses must fail.

The Court notes, however, that St. John has asserted other affirmative defenses to the patent infringement claims, Counts I and II, which are not addressed in PHG's motion for summary judgment. Thus, although PHG is entitled to summary judgment on the specific issues raised in the instant motion, PHG is not entitled to final entry of summary judgment on its claims of infringement in Counts I and II.

### 2. Patent infringement

■ PHG next seeks summary judgment in its favor on the patent infringement claims stated in Counts I & II. Whether a design patent is infringed is determined by first construing the claim to the design and then comparing it to the accused design. *Elmer*, 67 F.3d at 1577; *OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed.Cir.1997). The Court must determine whether the patented design as a whole is substantially similar in appearance to the accused design. *OddzOn Prod., Inc.*, 122 F.3d at 1405. The patented and accused designs are compared for overall visual similarity. *Elmer*, 67 F.3d at 1577; *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed.Cir.2002).

■ Comparison of the patented design to the accused design involves two distinct tests, both of which must be satisfied in order to find infringement: (1) the "ordinary observer" test and (2) the "point of novelty" test. *Contessa Food Prods., Inc.*, 282 F.3d at 1376; *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed.Cir.1993); *Unidynamics Corp. v. Automatic Prods. Int'l Ltd.*, 157 F.3d 1311, 1323 (Fed.Cir.1998). The "ordinary observer" test originated in *Gorham*

*Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871):

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

Under *Gorham* the focus is on the overall ornamental appearance of the claimed design, not selected ornamental features. *Elmer*, 67 F.3d at 1578. Proper application of the *Gorham* test requires that an accused design be compared to the claimed design, not to a commercial embodiment. *Payless Shoesource, Inc.*, 998 F.2d at 990.

■ The "point of novelty" test requires proof that the accused design appropriates the novelty which distinguishes the patented design from the prior art. *Contessa Food Prods., Inc.*, 282 F.3d at 1377. Although application of the two tests may sometimes lead to the same result, it is legal error to merge the two tests, for example, by relying on the claimed overall design as the point of novelty. *Contessa Food Prods., Inc.*, 282 F.3d at 1377. The focus of the "point of novelty" test is on those aspects of the patented design that make it different from prior art. *Id.* The ultimate question is whether the effect of the accused design viewed as a whole is substantially the same as the patented design. *Payless Shoesource, Inc.*, 998 F.2d at 991.

PHG's claim in the '405 patent is the "ornamental design for the medical label sheet, as shown." Figures 1 and 2 show the front view and front perspective view of the Medical Label Sheet. Figures 3, 5 and 6 show three alternative embodiments of the Medical Label Sheet. PHG's claim in the '197 patent is the "ornamental design for a label pattern for a medical label

sheet, as shown." Figures 1 and 2 show the front view and front perspective view of the label pattern for a medical label sheet. As to both patents, PHG identifies the ornamental features of its design as the size and the placement of labels on the medical label sheet.

The Court must compare St. John's accused design, viewed as a whole, to the ornamental depiction claimed in PHG's design patents. The Court is to compare the accused design to the claimed design; the Court is not to compare the claimed design to St. John's commercial embodiment. When properly compared, St. John's accused label design is substantially the same as PHG's patented designs as shown in the '405 and '197 patents. *See Payless Shoesource, Inc.*, 998 F.2d at 991. Additionally, the same configuration of hole punches as shown in the '405 patent at the top and left side of the patented design is found in St. John's accused design as well. An ordinary observer would be unable to identify any differences in St. John's design and PHG's patented design. The substantially identical nature of the designs is likely to deceive ordinary observers, inducing them to purchase St. John's accused product rather than PHG's. St. John's design also appropriates the novelty of PHG's patented design which distinguishes it from the prior art, that is, the different sizes of labels in the bottom two rows and their placement within the overall design. *See Contessa Food Prods., Inc.*, 282 F.3d at 1377.

St. John contends that its accused product does not appropriate the "point of novelty" of PHG's patented designs because PHG identifies the "point of novelty" as "the different sizes of labels and their placement on the sheet." St. John reminds the Court that James Riley contributed "most of this supposed 'point of novelty' and included it in the prior art PLS–103." (Docket Entry No. 210, Combined

Memorandum at 20.) This argument is without merit. The evidence establishes that St. John's design appropriates the "point of novelty" of PHG's patented design which distinguishes it from the prior art, which is the different sizes of labels *in the bottom two rows and their placement within the overall design.* The evidence is undisputed that the design of Riley's PLS–103 did not include various sizes of labels in the bottom two rows. Rather, the design of the PLS–103 included thirty rectangular labels, 2 ½″ × 1″ in size, in three rows of ten labels each, which were shifted to the right and down to create room for five 1/4″ diameter punch holes along the top of the sheet and seven 1/4″ punch holes along the left margin. The evidence shows that Moyer and Stewart conceived of the design which replaces the bottom one row of labels of the PLS–103 with two rows of labels of various sizes. St. John concedes "that the individually removable labels of the St. John product correspond in size and shape to the labels of the patent[ed] design." (*Id.* at 21.) Thus, St. John's accused design appropriates the "point of novelty" of the '405 and '197 patents. Moreover, the "point of novelty" is primarily ornamental, not functional, as discussed above.

Finally, St. John contends that PHG presented the U.S. Patent Office with designs consisting entirely of black lines on a white background. The patent examiner did not see white labels on a white background and did not consider the design patentability of a white-on-white pattern. St. John claims "[i]t is only if the lines of separation are readily visible, creating substantially the same visual impression as the patent drawings, that the patented design exists. Lines printed on the sheet that have the patented appearance but do not define the shape of removable labels would infringe, but similarly configured actual lines of separation that do not have

that appearance do not infringe." (*Id.*) St. John has not cited any case supporting this argument.

As the Court previously noted in its prior opinion, *PHG Technologies, LLC,* 2005 WL 3301601 at*7:

> Other design patents have employed black lines to indicate the placement of labels on a sheet. (Prelim. Inj. Hr'g, Plaintiff's Collective Ex. 1, "Tab Compatible Divider Label Sheet," Burke, et al. (U.S.Pat. No. Des.423,044); "Print Indicia and Address Label Sheet", Hamilton et al. (U.S. Pat. No. D448,404 S); "Label Form," Sanford et al. (U.S. Pat. No. D473,264 S); "Label Sheet," Hodsdon et al. (U.S. Pat. No. D476,031 S).) Consequently, the Court determines it is improper to compare St. John's product (Prelim. Inj. Hr'g, Plaintiff's Ex. 6) to PHG's product with black lines drawn on it to resemble the drawing in PHG's '405 design patent. (Prelim. Inj. Hr'g, Defendant's Ex. 1.)

The critical comparison is the overall design of St. John's medical label sheet to the ornamental depiction contained in PHG's design patents. When compared, St. John's accused design and PHG's patented design are identical. An ordinary observer would be very hard-pressed to identify any differences in the two designs.

St. John has not generated a genuine issue of material fact for trial on these particular issues raised concerning whether its accused design infringes PHG's patented designs. St. John points out, however, that it has raised other affirmative defenses to infringement, including estoppel, unclean hands, and patent misuse, which have not been addressed by the parties. Because defenses affecting the infringement analysis remain outstanding, PHG has not shown its entitlement to summary judgment on its own Counts I and II or on St. John's Counterclaim Counts I and II.

### 3. Trademark claims

PHG claims that (1) it is entitled to a summary judgment finding its federally-registered "EasyID" trademark is valid, that it is the owner of the mark, and that it has a right to use the mark; (2) it is entitled to summary judgment on the trademark infringement claim stated in Count VII; and (3) it is entitled to summary judgment finding common law trademark infringement, unfair competition, and violation of the Tennessee Consumer Protection Act (Counts VIII, IX & X). The sole evidentiary support PHG offers in support of these claims is the Affidavit of Brian Moyer (Docket Entry No. 149).

The Court identifies numerous problems with the Moyer Affidavit which preclude the Court from effectively analyzing the trademark infringement claims. Moyer attests that the trademark is federally registered, ¶ 65, but a copy of the federal registration is not provided. St. John placed a copy of the federal trademark registration into the record. The Moyer Affidavit is replete with self-serving and conclusory statements for which no evidentiary support is provided and for which the basis of Moyer's personal knowledge in making such statements is not explained.

Several examples are: ¶ 68, "PHG's EasyID Trademark has been used with its extensively promoted and advertised software and label sheets, and is widely recognized as a source of superior quality and accuracy for patient identification[ ]"; ¶ 69, "In the relative market, namely that for medical label sheets, PHG enjoys exclusive use of the EasyID Trademark, except for the use by infringers now in litigation[ ]"; ¶ 74, "St. John promoted and offered its identical label sheets under the infringing EASY ID name through the same chan-

nels of trade for sale to the same class of purchasers as does PHG for its own products[ ]"; ¶ 76, "St. John's sales representatives also contacted potential customers by telephone, made on-site presentation, and distributed point of sale materials[ ]"; ¶ 78, "St. John promoted and sold the St. John accused product to customers St. John knew were already using or had used the EasyID brand label sheets[ ]"; ¶ 83, "St. John used the words 'EASY ID' to knowingly promote and sell the accused product to customers of PHG's products[ ]"; and ¶ 85, "St. John intended to select the "EASY ID" mark for its identical accused product knowing of PHG's extensive use of its "EasyID" Trademark."

PHG has not presented any substantive evidence to support these broad allegations, which in some cases appear to mimick legal tests that the Court must apply. There is no evidence of trademark use, advertising or promotion to establish the strength of the mark; of actual confusion of consumers in the marketplace, if such evidence exists; of the marketing channels used; or of the likely degree of care exercised by the purchaser. Without evidence, the Court cannot address the eight applicable factors to determine likelihood of confusion as stated in *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, 648 (6th Cir.1982). The paucity of evidence precludes the Court from granting PHG summary judgment on the claims and counterclaims relating to its trademark. Accordingly, the motion will be summarily denied. PHG has not shown its entitlement to summary judgment on Counts VII, VIII, IX and X or on St. John's Counterclaim Counts VII, VIII, IX and X.

### 4. Implied license

Finally, PHG seeks summary judgment on St. John's affirmative defense of implied license. St. John asserted in response to the claims brought against it

that because of PHG's conduct in charging certain customers higher prices for computer software if the customers refused to execute sole source agreements for labels, such purchasers of PHG's software acquired an implied license to obtain from any source label sheets that can be used with the PHG software. St. John claims that, as a supplier to such purchasers, St. John enjoyed the benefit of the implied license and is sheltered by the license from claims of infringement by PHG.

■ The case on which St. John relies, *Leitch Mfg. Co. v. Barber Co.,* 302 U.S. 458, 463, 58 S.Ct. 288, 82 L.Ed. 371 (1938), is inapposite to the facts of this case. There the Barber Company owned a process patent which defined in the claims of the patent a method of road building. *Id.* at 460, 58 S.Ct. 288. Leitch Manufacturing Company, Barber's competitor, delivered bituminous emulsion, which is an unpatented material, to a road builder knowing that the material would be used in accordance with the method claimed in Barber's process patent. *Id.* Leitch contended that Barber's claim for contributory infringement could not survive because if it did, Barber would be allowed to obtain a limited monopoly of an unpatented staple of commerce. *Id.* The Supreme Court agreed observing that "every use of a patent as a means of obtaining a limited monopoly of unpatented material is prohibited. It applies whether the patent be for a machine, a product, or a process. It applies whatever the nature of the device by which the owner of the patent seeks to effect such unauthorized extension of the monopoly." *Id.* at 463, 58 S.Ct. 288. Here, by contrast, PHG is the owner of design patents on medical label sheets, but there is no evidence that PHG sought to obtain a limited monopoly on unpatented material.

■ The Court agrees with PHG that the doctrine of implied license applies only

to method or combination patents, *Lifescan, Inc. v. Polymer Technology Intern. Corp.*, 35 U.S.P.Q.2d 1225, 1231 (W.D.Wash.1995), and St. John admitted that PHG's '405 and '197 patents are neither method nor combination patents (Docket Entry No. 179, Response to Statement of Undisputed Facts ¶ 76). Moreover, PHG alleges that St. John is a direct infringer under 35 U.S.C. § 271(a) because St. John without authority made, used, or sold a patented invention within the United States during the term of the patent. Thus, "whether or not [PHG's] *customers* have an implied license to practice the methods claimed in the two patents … such a license does not create an implied license for [St. John] to make and sell" the medical label sheets claimed in the '405 and '197 patents. *See Lifescan, Inc.*, 35 U.S.P.Q.2d at 1232 (emphasis in original). Thus, PHG is entitled to summary judgment on this affirmative defense.

### III. *CONCLUSION*

St. John's motion for summary judgment on PHG's Counts I & II and St. John's Counterclaim Counts I & II will be denied. St. John has not carried its burden to show by clear and convincing evidence that there is a genuine issue of material fact for trial on its claim that PHG's design patents are invalid due to an on-sale bar.

PHG's motion for partial summary judgment will be granted in part and denied in part. The motion will be granted on two patent validity issues: (1) St. John failed to carry its burden to show by clear and convincing evidence that there is a genuine issue of material fact for trial on whether PHG's patented designs are primarily functional, not ornamental; and (2) St. John did not carry its burden to show by clear and convincing evidence that there is a genuine issue of material fact for trial on its claim that PHG's design patents are invalid due to an on-sale bar. PHG's motion will be granted as a matter of law with regard to St. John's affirmative defense of implied license.

PHG's motion will also be granted because St. John has not generated a genuine issue of material fact for trial on whether its accused design infringes PHG's patented designs. Because St. John has raised other affirmative defenses to infringement, including estoppel, unclean hands, and patent misuse, which have not been addressed by the parties and remain outstanding, PHG has not shown its entitlement to summary judgment on its own Counts I and II or on St. John's Counterclaim Counts I and II.

PHG's motion will be summarily denied with regard to the trademark claims because PHG has not produced evidence from which the Court can determine whether PHG has shown its entitlement to summary judgment on Counts VII, VIII, IX and X or on St. John's Counterclaim Counts VII, VIII, IX and X.

An appropriate Order will be entered.