# United States Court of Appeals for the Federal Circuit

2007-1168

ERICO INTERNATIONAL CORPORATION,

Plaintiff-Appellee,

v.

VUTEC CORPORATION and WIREMAID PRODUCTS,

Defendants,

and

DOC'S MARKETING CORPORATION,

Defendant-Appellant.

Jay R. Campbell, Renner, Otto, Boisselle & Sklar, LLP, of Cleveland, Ohio, argued for plaintiff-appellee. With him on the brief were Todd R. Tucker and Mark C. Johnson.

Douglas W. Sprinkle, Gifford, Krass, Sprinkle, Anderson & Citkowski P.C., of Troy, Michigan, argued for defendant-appellant. With him on the brief was Mark D. Schneider.

Appealed from: United States District Court for the Northern District of Ohio

Judge Kathleen M. O'Malley

# United States Court of Appeals for the Federal Circuit

2007-1168

ERICO INTERNATIONAL CORPORATION,

Plaintiff-Appellee,

v.

VUTEC CORPORATION and WIREMAID PRODUCTS,

Defendants,

and

DOC'S MARKETING CORPORATION,

Defendant-Appellant.

Appeal from the United States District Court for the Northern District of Ohio in case no. 1:05-CV-2924, Judge Kathleen M. O'Malley.

_____

DECIDED:  February 19, 2008

_____

Before NEWMAN, RADER, and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge RADER.  Dissenting opinion filed by Circuit Judge NEWMAN.

RADER, Circuit Judge.

Defendant-Appellant Doc's Marketing Corp. ("Doc's") appeals the decision of the United States District Court for the Northern District of Ohio granting a preliminary injunction in favor of Plaintiff-Appellee Erico Int'l Corp. ("Erico").  Erico Int'l Corp. v. Doc's Mktg., Inc., 1:05-cv-2924 (N.D. Ohio May 3, 2006) ("Initial Order"); Erico Int'l Corp. v. Doc's Mktg., Inc., 1:05-cv-2924 (N.D. Ohio Jan. 9, 2007) ("Reconsideration

Order"). Because this court finds that Doc's has raised a substantial question as to the validity of the patent at issue, this court vacates the preliminary injunction.

I

Erico develops and manufactures a variety of fasteners used in the installation of electrical and communications cables for commercial buildings and other facilities. In particular, Erico sells a popular J-Hook fastener. The J-Hook, offered in different strengths and sizes, is a metal device that supports lengths of cable. Erico, through the inventor Raymond Scott Laughlin, obtained U.S. Patent No. 5,740,994 ("the '994 patent") on its J-Hook and the method for its use. The '994 patent issued on April, 21 1998 from an application filed on December 26, 1996. Figure 6 of the '994 patent illustrates the J-Hook:



FIG. 6

Erico does not assert infringement of the apparatus claim to the J-Hook, but asserts claim 17, the method of using the J-Hook. Claim 17 reads:

A <u>method</u> of supporting a run of a bundle of low voltage communication cable, comprising the steps of providing spaced supports, each comprised of a curved saddle having smooth down-turned obtuse angle lateral edges, suspending the run from saddle to saddle, and spacing the saddles along the run so that the run sags between saddles no more than about 30 cm below the saddles.

'994 Patent col.9 ll.61-67 (emphasis added).  Figure 18 from the '994 patent illustrates the method:



In January 2000, the United States Patent and Trademark Office ("PTO") reexamined the '994 patent in Reexamination No. 90/005,606.  Based on the reexamination, the PTO cancelled numerous apparatus claims on the J-Hook.  Specifically, the PTO found the apparatus claims obvious under 35 U.S.C. § 103 in light of three references – Akashi et al. (JP '290), 3-89290, Sep. 11, 1991, (Japanese Kokai Patent); Erico, "For Communications & Low Voltage Applications," pp. 3-26 (1994); and OBO Bettermann Publication, p. 243, and "Cable Support Clips," p. 18.  <u>Ex parte Raimond Scott Laughlin</u>, Appeal No. 2002-0244 (heard on May 14, 2002).  The Board of Patent Appeals and Interferences ("Board") affirmed the cancellations.  Claim 17 survived the reexamination process.

Doc's manufactures a variety of hardware items and specifically manufactures and sells J-Hooks. Doc's concedes that its J-Hook copies Erico's J-Hook. In 2005, Erico discovered that Doc's was selling a copy of its J-Hook and informed Doc's. At first, Doc's assured Erico that it would not sell its existing J-Hook inventory. Doc's also assured Erico that it would refrain from future copying and selling of J-Hooks. "Thereafter, however, [Doc's] sold the very products it promised to retain and continued to manufacture and sell knock off J-Hooks." Initial Order, slip op. at *5. Erico filed suit to enjoin Doc's alleged infringement of Claim 17 of the '994 patent. Doc's then challenged Claim 17's validity. Id.

II

This court reviews a district court's decision granting a motion for preliminary injunction under an abuse of discretion standard. Novo Nordisk of N. Am., Inc. v. Genentech, Inc., 77 F.3d 1364, 1367 (Fed. Cir. 1996). "An abuse of discretion may be established by showing that the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." Id.

"A decision to grant or deny a preliminary injunction is based on the district court's consideration of four factors: '(1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest.'" PHG Techs., LLC v. St. John Cos., Inc., 469 F.3d 1361, 1365 (Fed. Cir. 2006) (citing Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003)). To show a likelihood of success on the merits, Erico must show a likelihood that Doc's infringes a valid claim of the '994 patent. See

07-1168                                     4

Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001). From the other vantage point, Doc's must show a substantial question of invalidity to avoid a showing of likelihood of success. See PHG Techs., LLC, 469 F.3d at 1365.

On May 3, 2006, the district court granted Erico's motion for a preliminary injunction. Initial Order. Doc's filed a motion for reconsideration. The district court denied Doc's reconsideration motion. Reconsideration Order. The district court applied the correct four factor test with emphasis on the "likelihood of success" by citing to Oakley Inc., 316 F.3d 1331 in its Initial Order and to eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006) in its Reconsideration Order.

In analyzing Erico's likelihood of success on the merits, the district court considered Doc's three invalidity defenses – (1) inequitable conduct by Erico in obtaining the patent, (2) on-sale bar under 35 U.S.C. § 102(b), and (3) obviousness under 35 U.S.C. § 103. First, Doc's "argues that the '994 Patent is invalid (or otherwise unenforceable) due to inequitable conduct stemming from Plaintiff's failure to disclose material information to the PTO during the patent's prosecution." Initial Order at 6. In particular, Doc's says that Erico did not disclose the 1990 EIA/TIA standard that sets forth a spacing standard for open-top cable supports. However, the district court correctly found that Doc's did not prove intent to defraud the PTO. Therefore inequitable conduct has not been shown to be a viable defense at this stage of the proceeding. Id. at 7.

With respect to the on-sale bar defense, Doc's "presented no evidence, however, that anyone actually practiced Claim 17's method by using a J-Hook more than one year prior to the filing date of the '994 Patent. On the record presented, therefore, § 102(b)

likely does not apply." Id. (emphasis in original). Once again, this court sustains the trial court's sound reasoning, given the record at this stage of the proceeding.

Finally, Doc's asserted "that Claim 17 is invalid under 35 U. S. C. § 103 because the combination of a prior art J-Hook with the methodology outlined in Claim 17 would have been 'obvious,' as defined in the statute, in light of everything that existed in the public domain before the patent's filing date." Id. Doc's specifically asserted that the OBO Betterman reference in combination with the 1990 EIA/TIA (Electronics Industries Alliance/Telecommunications Industry Association) spacing standards renders Claim 17 obvious. According to the district court, "[t]he 'conforming standards' identified in the patent are the very spacing requirements set forth in the 1990 EIA/TIA standard." Id. at 8. However, the district court found Doc's obviousness defense likely to fail "because the [PTO] had sufficient information before it during its prior examinations to assess the very obviousness claim [Doc's] now raises, and because secondary considerations of nonobviousness cut in [Erico's] favor." Id. at 8-9.

After finding Doc's invalidity challenges did not raise a substantial question and construing the claim, the district court found Erico was likely to successfully prove that Doc's engaged in contributory infringement because the J-Hooks sold by Doc's were especially adapted for hanging communication cables as claimed, and because Doc's failed to show that the J-Hooks had any substantial non-infringing use.. Id. at 12. Based on Doc's admitted copying and sale of J-Hooks, the district court found that Erico would suffer irreparable harm if an injunction did not issue and that the balance of hardships heavily weighed in Erico's favor. Id. at 13-14. Therefore, the district court

granted the preliminary injunction. Doc's appeals. This court has jurisdiction under 28 U.S.C. § 1292(a)(1).

On appeal, Doc's specifically contends that Claim 17 is invalid as obvious over the hook disclosed in the OBO Betterman prior art reference when combined with the EIA standard. The OBO Betterman prior art in the figure below shows a hook very similar to the J-Hook with downwardly flared flanges along the hook saddle.



In addition to the OBO Betterman reference, Doc's cites to a specific section of the EIA standard as well as Mr. Laughlin's testimony regarding cable installation practices. Doc's contends the combination of the OBO Betterman reference coupled with the EIA standard and Mr. Laughlin's testimony raise a substantial question as to the validity of Claim 17.

Furthermore, Doc's contends that the District Court misinterpreted the PTO's consideration of the EIA standards proffered by Doc's to invalidate the '994 patent. The District Court reasoned that the PTO had upheld the patent's validity in light of the same prior art (i.e., the EIA standards) during the Reexamination No. 90/005,606 proceedings. However, in granting a second reexamination, the PTO stated that the "EIA/TIA Standard was not cited in Patent No. 5,740,994 or prior Reexamination No. 90/005,606; OBO was cited in the prior reexamination proceeding." Reexamination

Order, 90/007,891 (Mar. 2, 2006) (emphases added). Thus, the PTO cast doubt on the District Court's finding that the "conforming standards" mentioned in the '994 patent are the same as the 1990 EIA/TIA standard and that the PTO had considered the 1990 standard during the first reexamination. In sum, Doc's contends that the grant of the second reexamination request raises a substantial question as to the validity of claim 17.

Erico, on the other hand, asserts that the district court performed a proper obviousness analysis under KSR International Co. v. Teleflex, Inc., 550 U.S. ___, 127 S.Ct. 1727, 1742. According to Erico, that analysis shows that Doc's would most likely not prevail on its invalidity defense under 35 U.S.C. § 103. Erico contends that the district court had rejected Doc's obviousness invalidity challenge based on the PTO's reexamination in view of the OBO Betterman reference and the disclosure of "conforming standards" in the '994 patent itself. Furthermore, Erico argues that the district court is not bound by the findings of the PTO.

III

"Validity challenges during preliminary injunction proceedings can be successful, that is, they may raise substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial." Amazon.com, Inc., 239 F.3d at 1358. In other words, a defendant need not prove actual invalidity. On the contrary, a defendant must put forth a substantial question of invalidity to show that the claims at issue are vulnerable. Thus, a showing of a substantial question of invalidity requires less proof than the clear and convincing standard to show actual invalidity. Id.

This court concludes that the OBO Betterman reference coupled with the EIA standards and Mr. Laughlin's testimony mount a serious challenge to the validity of Claim 17 of the '994 patent. First, the OBO Betterman reference shows a hook fastener with downwardly flared flanges nearly identical to the Erico J-Hook. The downwardly flared flanges implicitly point to the reasonableness of sag in cables installed by using OBO Betterman fasteners. Second, the EIA standard states the appropriate spacing used between open-top cable supports. The OBO Betterman fasteners and the J-Hooks are similar to open-top cable supports in that cables are suspended between supporting members (i.e., J-Hooks, rungs of an open-top cable ladder). The applicable section of the EIA standard reads:

> 4.6.5 Cable Support
> Where zone conduit or cable tray is not available in a suspended ceiling space and where telecommunications cables are allowed to be placed loosely in the ceiling, adequate open-top cable supports, located on 1222-1525-mm (48-60-in) centers, shall be provided.

It is reasonable to see that downwardly flared flanges coupled with the EIA spacing requirements could implicitly motivate a person of ordinary skill to use J-Hooks with the EIA spacing to achieve cable sag of no more than about 30 centimeters. See KSR Int'l Co., 127 S.Ct. at 1743; Dystar Textilfarben GmbH v. C.H. Patrick Co., 464 F.3d 1356, 1368 (Fed. Cir. 2006) ("[T]here exist[s] an implicit, indeed common-sensical, motivation to combine the two references.").

To further show common cable installation practices prior to the filing of the '994 patent application, Mr. Laughlin's testimony shows an implicit motivation to combine the prior art. In part, Mr. Laughlin testified:

> Q. I'm going to get to that in just a moment, okay. More than a year prior to the filing date of your patent, was it a common practice for installers of

communication cables to pull the cable taut once they installed the cable between the supports if done in a workmanlike fashion?

A. Yes, if done in a workmanlike fashion.

Q. Were communication cables installed more than a year prior to your patent filing date in a workmanlike fashion?

A. There certainly were people installing them in a workmanlike fashion, and there were many people that were not.

Q. But there were at least some people that were installing them in a workmanlike fashion?

A. Yes, some.

Q. More than a year before your filing date?

A. Yes.

Q. And you knew that when you filed your patent application?

A. Yes.

Q. When those installers who did install in a workmanlike fashion more than a year prior to your filing date in open top cable supports and pulled taut, the sag would be less than 30 centimeters, correct?

A. Yes, if they were pulled taut.

Transcript of Proceedings at 92-93, Erico Int'l Corp. v. Doc's Mktg. Corp., 1:05-cv-2924 (N.D. Ohio Mar. 9, 2006). Mr. Laughlin's testimony shows the reasonableness of installing cables using open-top cable supports with EIA spacing standards resulting in less than 30 centimeters of sag. As such, the OBO Betterman reference coupled with the EIA standards and Mr. Laughlin's testimony raise a substantial question of invalidity of Claim 17.

Even assuming the accuracy of the District Court's secondary consideration analysis, it is reasonable to infer that one of ordinary skill would have considered the

OBO Betterman hook coupled with the EIA standards and common knowledge within the art as shown by Mr. Laughlin's testimony to explain that Claim 17 is vulnerable based on invalidity. See KSR Int'l Co., 127 S.Ct. at 1742; Amazon.com, Inc., 239 F.3d at 1358. Thus, Doc's invalidity challenge based on obviousness cast enough doubt on the validity of Claim 17 to negate likelihood of success on the merits as to infringement of a valid patent. At this point, of course, Doc's has only cast doubt on the validity of the '994 patent. The District Court will have the opportunity to reach a final validity determination at trial.

IV

Accordingly, this court vacates the district court's grant of a preliminary injunction.

VACATED.

COSTS

Each party shall bear its own costs.

# United States Court of Appeals for the Federal Circuit

2007-1168

ERICO INTERNATIONAL CORPORATION,

Plaintiff-Appellee,

v.

VUTEC CORPORATION and WIREMAID PRODUCTS,

Defendants,

and

DOC'S MARKETING CORPORATION,

Defendant-Appellant.

Appeal from the United States District Court for the Northern District of Ohio in case no. 1:05-CV-2924, Judge Kathleen M. O'Malley.

NEWMAN, <u>Circuit Judge</u>, dissenting.

I respectfully dissent from the reversal of the district court's grant of a preliminary injunction. The injunction preserves the status quo during this litigation, and is fully within the district court's discretionary authority. My colleagues on this panel have not only applied an incorrect standard to the preliminary injunction factor of likelihood of success on the merits, but they have also departed from the policy guidance of precedent, including <u>eBay, Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388 (2006) (the traditional criteria of equity apply to injunctions in patent cases) and <u>Amoco Production Company v. Village of Gambell</u>, 480 U.S. 531 (1987) ("The standard for a preliminary injunction is essentially the same as

for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

***The injunction pendente lite***

The Court explained in University of Texas v. Camenisch, 451 U.S. 390, 395 (1981) that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  See Ugine & ALZ Belgium v. United States, 452 F.3d 1289, 1297 (Fed. Cir. 2006) (granting preliminary injunction to maintain the status quo pending disposition of the movant's claims).  The question here on appellate review is whether the district court abused its discretion in deciding to maintain the status quo during this litigation.  In Doran v. Salem Inn, 422 U.S. 922 (1975) the Court emphasized that appellate courts have limited review of preliminary injunctions granted by district courts, stating that "while the standard to be applied by the district court in deciding whether a plaintiff is entitled to a preliminary injunction is stringent, the standard of appellate review of a preliminary injunction is simply whether the issuance of the injunction constituted an abuse of discretion."  Id. at 932.  See also, e.g., Brown v. Chote, 411 U.S. 452, 457 (1973) (court may only consider whether issuance of the preliminary injunction constituted an abuse of discretion);

The district court decided that the status quo should be preserved during this litigation.  In overturning that decision, the panel majority mistakes the law, misplaces the burdens, misconstrues the assumptions, and ignores the district court's discretionary authority and its balance of the equitable aspects.  The panel majority does not explain how the district court abused its discretion, nor is recognition given to the standard of review whereby, as this court has stated: "A decision granting a preliminary injunction will be

2007-1168                                    2

overturned on appeal only if it is established that the district court made a clear error of judgment in weighing relevant factors, or relied on incorrect law or on clearly erroneous factual findings." Novo Nordisk of North America, Inc. v. Genentech, Inc., 77 F.3d 1364, 1367 (Fed. Cir. 1996).

***The Factors of Equity***

This court has well recognized, as stated in Illinois Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679 (Fed. Cir. 1990), that "[t]his is only the first round, involving only a preliminary injunction, a matter of equity, 35 U.S.C. § 283, and requiring an evaluation and balancing of the four above-listed factors and the circumstances surrounding each. Those factors and circumstances tend to overlap, but none may be ignored en route to a determination of whether, in the district court's words, it would be inequitable for an injunction to issue." Id. at 681 (internal quotation marks omitted). In Illinois Tool the court recited the four traditional factors relevant to a preliminary injunction, viz. (1) reasonable likelihood of success on the merits; (2) irreparable harm; (3) balance of hardships; and (4) the impact on the public interest. Id.

The panel majority gives no consideration to the equitable factors supporting the grant of this preliminary injunction, although the Court has made clear that such factors apply. See Ashcroft v. American Civil Liberties Union, 542 U.S. 656, 666 (2004) (the equitable issues are highly relevant at the pre-trial stage). In Camenisch the Court explained that when the decision on the merits is unclear at the preliminary stage, or the record too sparse for confident determination, the decision is based "not on the ultimate merits of [the plaintiff's] case but rather on the balance of the Canal Authority factors." 451 U.S. at 398. These factors are described by the Court as "whether the plaintiff will be

irreparably harmed if the injunction does not issue; whether the defendant will be harmed if the injunction does issue; whether the public interest will be served by the injunction; and whether the plaintiff is likely to prevail on the merits." Id. at 392 (citing Canal Authority of Fla. v. Callaway, 489 F.2d 567 (5th Cir. 1974)). These factors have been well recognized by this court. e.g., Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368 (Fed. Cir. 2006); Helifix Ltd v. Blok-lok, 208 F.3d 1339 (Fed. Cir. 2000). Although the majority opinion recites as "background" that "the district court found Erico would suffer irreparable harm if an injunction did not issue and that the balance of harms weighed heavily in Erico's favor," maj. op. at 6, that is the opinion's last mention of any equitable factor. The district court, however, discussed and applied them, in its decision that the patent right should be preserved until the defense of invalidity is decided.

As precedent teaches, equitable principles are at least as relevant when the trial court must consider the situation at the pre-trial stage, before the evidence has been tested. It is not correct that it suffices to "cast doubt" or "raise a question" about a patent's validity, as the court today holds.

***The Casting of Doubt***

As discussed in Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 429 (2006), "the burdens at the preliminary injunction stage track the burdens at trial." For issues on which the defendant will bear the burden of proof at trial, that burden also applies at the preliminary injunction stage. Id. The district court, considering the placement and burdens of proof, found that Erico showed its likelihood of success on the issue of infringement -- indeed, copying and infringement were conceded -- and that the defendants had not established their likelihood of success on the issue of invalidity. The

2007-1168                                          4

panel majority, ignoring the district court's reasoning as well as its discretionary authority, finds that a "substantial question" of invalidity was raised by the defendants. The panel majority states that it suffices to "cast doubt," to "show that the claims are vulnerable," to reverse the district court's preliminary injunction.

My colleagues have applied an incorrect criterion. The correct criterion is not whether there is a "substantial question"; it is whether the defendants have shown that they are likely to succeed on the merits, on the standards and burdens of proof as would prevail at trial. In Gonzales, 546 U.S. at 429, the Court emphasized that the burdens of proof do not change. Initially the movant has the burden of coming forward to support the motion; the Federal Circuit has recognized this procedure, e.g. Sanofi-Synthelabo, 470 F.3d at 1374 ("[The movant] must demonstrate that, in light of the presumptions and burdens that will inhere at trial on the merits [the movant] will likely prove that [Defendant]'s product infringes the '265 patent and that it will withstand [Defendant]'s challenges to the validity and enforceability of the '265 patent.") However, this does not relieve the attacker from the requirement of showing the likelihood of success in invalidating the patent, on application of the presumptions and the placement and burden of proof.

As used by my colleagues, the raising of a "substantial question" does not require a preponderance of the evidence, although it requires "more than a mere scintilla." See Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951). Raising a "substantial question" concerning validity, it is not the same as establishing the "likelihood" of establishing invalidity. Precedent is clear that the standard is the likelihood of success at trial, with recognition of the presumptions and burdens. See, e.g., Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1370 (Fed. Cir. 2005); Nat'l Steel Car, Ltd. v. Canadian Pac.

Ry., Ltd., 357 F.3d 1319, 1325 (Fed. Cir. 2004); Ranbaxy Pharms., Inc. v. Apotex, Inc., 350 F.3d 1235, 1239 (Fed. Cir. 2003); Purdue Pharma L.P. v. Boehringer Ingelheim GmbH, 237 F.3d 1359, 1363 (Fed. Cir. 2001); Smith International, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1579 (Fed. Cir. 1983).[1]

***The District Court's Decision***

The district court considered the evidence as provided at this pre-trial stage, and applied the correct standard. The court construed the claims, discussed the prior art including the 1990 EIA/TIA standards, considered the results of the first reexamination and acknowledged the pending second reexamination. The district court referred to the patentee's commercial success and the defendants' admitted copying. The significance of objective evidence in determining patent validity was emphasized in KSR, Inc. v. Teleflex, 127 S. Ct. 1727, 1734 (2007), the Court reminding us of its ruling in Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966) that such evidence aids in understanding how an invention was viewed by contemporaries in the field of the invention. The district court considered the relative simplicity of the invention, a factor that appears to have influenced my colleagues, who with perfect hindsight find that it would have been obvious to make Erico's

---

[1] The Federal Circuit has used the word "substantial" in the context of the preliminary injunction, but this usage, although loose, has not changed the obligation to show the likelihood of success, nor has it inverted the burden of proof. This is illustrated in Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368 (Fed. Cir. 2006), where this court explained that "in light of the deferential standard we apply in reviewing grants or denials of preliminary injunctions, and mindful that a patent is presumed valid, and this presumption exists at every stage of the litigation, we conclude that the district court did not clearly err in finding that [the patentee]'s anticipation defense lacks substantial merit." Id. at 1374 (internal citations omitted). In Genentech v. Novo Nordisk A/S, 108 F.3d 1361 (Fed. Cir. 1997), the court discussed the issue of validity in terms of whether a "substantial question" was raised, but explicitly retained the presumption of validity and the placement of burden of proof.

J-hook by combining the OBO Betterment reference, the EIA standards, and Mr. Laughlin's testimony. My colleagues mention only the evidence against the patent -- as if reviewing a jury verdict after it has been rendered. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) (jury verdict must be sustained if supported by substantial evidence). However, the question is whether the defendants are likely to prove invalidity at trial, not whether they "cast enough doubt on the validity." Maj. op. at 11.

The district court, discussing the balance of harms, referred to Erico's argument that if it is ultimately ruled that the defendants were improperly enjoined, they can be made whole by money damages; while if the defendants are not enjoined, Erico will experience price and market erosion from which Erico is unlikely to recover should it prevail at trial. Erico points out that the defendants were previously serving this same market with other products, and can continue to do so. This is not a case in which the patent is so conspicuously invalid that invalidity outweighs all of the equitable considerations and demands immediate relief; such a situation should produce summary judgment, not trial.

The panel majority errs in disregarding the traditional criteria of the grant and review of a preliminary injunction. Abuse of discretion has not been shown in the district court's consideration and weighing of the relevant factors at this preliminary stage. I must, respectfully, dissent.