**XEROX CORPORATION, Plaintiff–Cross Appellant,**

v.

**3COM CORPORATION, U.S. Robotics Corporation, U.S. Robotics Access Corp., and 3Com Computing, Inc., Defendants–Appellants.**

Nos. 02–1186, 02–1305, 02–1321.

United States Court of Appeals, Federal Circuit.

DECIDED: Feb. 20, 2003.

Rehearing Denied April 1, 2003.

Before MICHEL, LOURIE, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

3Com Corporation, U.S. Robotics Corporation, U.S. Robotics Access Corporation, and 3Com Computing, Inc., (collectively "3Com") appeal from an order of the United States District Court for the Western District of New York ruling on summary judgment that 3Com infringed U.S. Patent No. 5,596,656 ("the '656 patent"), owned by Xerox Corporation, and that the '656 patent is neither invalid nor unenforceable. We uphold the district court's claim construction and *affirm* the grant of summary judgment of infringement. However, because this court's previous decision on the issue of claim construction did not obviate the need for a separate validity analysis, we *reverse* the grant of summary judgment of validity and *remand* the case for the district court to conduct a complete validity analysis.

I

The '656 patent relates to a system of unistroke symbols used to facilitate computerized recognition of handwriting. Each unistroke symbol of the invention is composed by a single pen stroke on a pres-sure-sensitive writing surface connected to a computer. The computer recognizes each symbol upon a delimiting operation, such as lifting the pen from the surface. One or more symbols can then be used to generate a displayed output character. Xerox explained during reexamination that "unistroke symbols are single stroke symbols (representing alphanumeric characters or specified functions) that are sufficiently well separated from each other graphically so that definitive recognition can occur after each such symbol is written, e.g., immediately upon pen-up, without requiring the system to wait for possible additional strokes."

Xerox brought suit alleging that 3Com infringed the '656 patent by making and selling PalmPilot devices that use a system of symbols known as "Graffiti" for handwriting recognition. 3Com asserted the defenses of noninfringement, invalidity, and unenforceability. 3Com also filed a request for reexamination of the '656 patent by the United States Patent and Trademark Office ("PTO"), which eventually confirmed the patentability of all the claims. After construing the pertinent claim language, the district court granted summary judgment of noninfringement to 3Com, concluding that the Graffiti system did not meet the limitations of spatial independence, definitive recognition, or graphical separation of the symbols. *Xerox Corp. v. 3Com Corp.*, 55 USPQ2d 1108 (W.D.N.Y.2000).

Xerox appealed to this court. We affirmed the district court's claim construction for the most part, but reversed the summary judgment of noninfringement. *Xerox Corp. v. 3Com Corp.*, 267 F.3d 1361, 60 USPQ2d 1526 (Fed.Cir.2001). We held that the "spatial independence" limitation requires that the accused device be able to distinguish between and recognize symbols

without reference to where a previous symbol was written on the writing surface. *Id.* at 1367, 267 F.3d 1361, 60 USPQ2d at 1530. We also held that the term "unistroke symbols" requires that the symbols have sufficient graphical separation, or distinctiveness, to enable the computer to "definitively recognize a symbol immediately upon delimitation or pen lift." *Id.* at 1366, 1367, 267 F.3d 1361, 60 USPQ2d at 1529, 1530.

We disagreed with the district court's analysis in several respects. First, we disagreed with the district court's suggestion that the graphical separation required by the independent claims of the '656 patent had to be sufficient to allow recognition of the different symbols indicated by different strokes even when the strokes were sloppily written. 267 F.3d at 1366, 60 USPQ2d at 1529. Second, we disagreed with the district court's conclusion that Graffiti does not allow for definitive recognition of symbols immediately upon pen lift by the user, because Graffiti allows certain letters to be accented, which requires multiple strokes. *Id.* at 1368, 267 F.3d 1361, 60 USPQ2d at 1530. We explained that the district court "did not consider the difference between definitive recognition of a character and definitive recognition of a symbol. All Graffiti symbols are created with one stroke (i.e., immediately upon pen lift).... [An accented letter] constitutes a multi-stroke, multi-symbol character." *Id.* at 1368, 267 F.3d 1361, 60 USPQ2d at 1530–31. Because we determined that the district court had erred in concluding on summary judgment that Graffiti lacked graphical separation, definitive recognition, and spatial independence, we reversed the summary judgment of noninfringement and remanded the case for further proceedings.

On remand, the district court granted summary judgment to Xerox on infringement, validity, and enforceability. *Xerox Corp. v. 3Com Corp.*, 198 F.Supp.2d 283 (W.D.N.Y.2001). The court understood this court's opinion as not conclusively deciding the issue of infringement and thus proceeded with an infringement analysis. The court characterized our opinion as defining graphical separation "in terms of whether or not a symbol could be definitively recognized by the recognition device immediately upon delimitation or pen lift." *Id.* at 293. Under that definition, the district court concluded, "there can be no usable set of spatially independent, single-stroke symbols that will not infringe on the '656 Patent." *Id.* at 294. The court therefore held that the Graffiti system infringed.

Addressing 3Com's defenses of anticipation and obviousness, the district court concluded that this court "presumably did not construe the claims in such a way as to be invalid." 198 F.Supp.2d at 296. For that reason, the court declined to compare the construed claims with the prior art references, but instead held that in light of our decision on claim construction, the asserted claims were "not invalid as against the prior art." *Id.* The court then proceeded to analyze and reject various other defenses of invalidity. Following the entry of summary judgment, Xerox filed a motion requesting injunctive relief. The court denied that request, noting that injunctive relief was not necessary in light of the availability of damages to compensate Xerox for the violation of its patent rights.

II

With regard to the lower court's grant of summary judgment of infringement, the district court properly understood the claim construction set forth in our prior opinion. Thus, the district court correctly defined "unistroke symbols" as requiring graphical separation, which is established

if the unistroke symbols are sufficiently distinct to enable a computer to definitively recognize them. As applied to writing systems using a pen-type device that moves across a writing surface and is lifted, unistroke symbols are single-stroke symbols that are sufficiently distinctive to be definitively recognized by a computer when the pen is lifted. Under that claim construction, 3Com has not raised any genuine issue of material fact regarding infringement of the independent claims.

■ 3Com points out that the discussion of stroke direction in our prior opinion suggests that similarly shaped symbols that are not distinguished by having opposite stroke directions cannot be considered sufficiently graphically separate. Based on our discussion of stroke direction, 3Com argues that Graffiti does not infringe because various pairs of Graffiti symbols have identical stroke directions and shapes that are not significantly different from one another. 3Com's argument, however, runs afoul of the statement, made twice in our prior opinion, that the term "unistroke symbols" requires "sufficient graphical separation" for a computer to "definitively recognize a symbol immediately upon delimitation or pen lift." 267 F.3d at 1366, 1367. That claim construction was binding on the district court on remand as law of the case and is also binding on us. Because the Graffiti system allows a computer to definitively identify each symbol upon pen lift, the district court was correct in holding that our prior decision compelled the conclusion that Graffiti features "unistroke symbols" as that term is used in the '656 patent. As 3Com points out, that is a very broad construction of the claim language, which has implications for the issue of validity, but we decline 3Com's invitation to revisit the claim construction issue and construe either graphical separation or spatial independence more narrow-

ly than we did in our prior decision. Accordingly, we find no error in the district court's infringement analysis, and we affirm that aspect of the district court's decision.

### III

■ 3Com argues that the district court erred in granting Xerox's motion for summary judgment of validity because the court failed to examine the prior art to evaluate whether the prior art anticipated or rendered obvious the claims of the '656 patent. We agree. Neither our claim construction nor the reexamination proceedings before the PTO obviated the need for the district court to conduct a complete validity analysis under 35 U.S.C. §§ 102 and 103.

A party "cannot avoid a full-blown validity analysis by raising the specter of invalidity during the claim construction phase." *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1346, 51 USPQ2d 1377, 1380 (Fed.Cir.1999). It is true that claims amenable to more than one construction should, when possible, be construed to be valid. When that is not possible, however, and the claim language reads on the prior art, the claims will be construed in accordance with their language and then held invalid. *See, e.g., Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 24, 57 USPQ2d 1057, 1064 (Fed.Cir.2000). The claims cannot be rewritten by the court to avoid prior art. *See Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1384, 58 USPQ2d 1286, 1292 (Fed.Cir.2001). For that reason, a decision with respect to claim construction does not constitute an implicit ruling that the construed claims are valid.

Xerox argues that this court could affirm the judgment of validity on the record because, as in *Consolidated Aluminum Corp. v. Foseco International Ltd.*, 910 F.2d 804, 15 USPQ2d 1481 (Fed.Cir.1990),

it is sufficiently clear from the record that the asserted claims are valid. We disagree. 3Com has made strong arguments that the asserted claims, as construed, are invalid in light of the Burr, Nagayama, and Sklarew references; 3Com's showing is certainly strong enough that it would not be "a wasteful and fruitless exercise to remand." *Id.* at 814, 15 USPQ2d at 1489. Because the district court has not analyzed the references for either obviousness or anticipation, remand is appropriate so that the district court may address the validity of the claims at issue.

■ In an effort to provide some guidance to the district court on remand, we address two additional points raised in arguments made to us on this appeal. The first point relates to Xerox's argument that the prior art references can be distinguished by the fact that they provide means for correcting the output of the system after symbol recognition has occurred. Definitive recognition does not require a permanent, unalterable choice of a symbol that cannot be changed if the recognition is later determined to be erroneous. Thus, the inclusion of a means for correcting output after a symbol has been recognized does not convert what would have been definitive recognition into tentative recognition. As long as the system completes the recognition of the unistroke symbol, subsequent action by the user or subsequent processing by the computer to delete or replace that symbol does not negate that recognition.

The second point relates to the Sklarew prior art reference. In our prior opinion, we noted that Xerox had sought to distinguish Sklarew (U.S. Patent No. 4,972,496) by arguing that Sklarew accommodated multi-stroke symbols; we did not, however, adopt that distinction or rule on what the Sklarew reference teaches. The district court should therefore thoroughly examine Sklarew and determine whether that reference discloses a system that incorporates multi-stroke symbols or a system that incorporates multi-symbol characters, such as the "x" character of Graffiti. As we have previously stated, the post-recognition interpretation of multi-symbol characters does not negate definitive recognition of the individual symbols, which is what the patented invention requires.

## IV

3Com further contends that the district court erred by granting Xerox summary judgment on 3Com's inequitable conduct defense. Inequitable conduct requires proof of a material misrepresentation or a failure to disclose material information combined with the intent to deceive. To survive summary judgment, 3Com is required to introduce evidence sufficient to create a genuine issue of fact as to both materiality and intent. *See Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872, 9 USPQ2d 1384, 1389 (Fed.Cir.1988).

On appeal, 3Com bases its unenforceability defense in part on Xerox's failure to disclose several prior art references to the PTO, including the Tappert and Sklarew references. The district court reviewed 3Com's allegations of failure to disclose references and concluded that the references were not material and that there was "no evidence of deceptive intent . . . to mislead the PTO by concealing any prior art references." 198 F.Supp.2d at 297. The court therefore rejected the omission of these references as evidence of inequitable conduct and held that the '656 patent was enforceable.

■ 3Com fails to direct us to evidence that would support the conclusion that the district court's ruling on intent was erroneous. In light of the requirement that the

accused infringer prove both materiality and intent by clear and convincing evidence, we hold that the district court did not err by concluding that 3Com has not introduced sufficient evidence from which a reasonable trier of fact could find that the elements of inequitable conduct had been established with regard to the undisclosed references. Accordingly, we uphold the district court's grant of summary judgment with respect to the undisclosed references.

3Com makes a separate argument that the district court failed to consider its contention that Xerox made material misrepresentations regarding the Nagayama reference to the PTO during reexamination. The district court did not discuss that argument in its order. The court's omission is understandable given the brief treatment of this issue in 3Com's memorandum opposing the grant of summary judgment. Nonetheless, 3Com raised the argument, and the record before us does not provide any clearly dispositive ground for rejecting that argument without guidance from the district court. In light of the fact that we are already remanding the case to the district court for a validity analysis, we deem it appropriate to vacate the grant of summary judgment of enforceability and direct the district court to explicitly address 3Com's argument that the alleged misrepresentations about Nagayama constituted inequitable conduct.

## V

Finally, Xerox cross-appeals the district court's February 22, 2002, order denying Xerox's motion for an injunction. We read the order as permanently denying Xerox's request for an injunction, rather than merely staying the imposition of injunctive relief pending appeal. Even though the district court considered some factors applicable to a stay, such as the likelihood of 3Com's success on the merits, there was no injunction for the court to stay, and the court's statements that "an injunction enjoining defendants from selling their products is not warranted" and that money damages are an adequate remedy in this case indicate that the court was entering a final order denying a permanent injunction.

■ Because the "right to exclude recognized in a patent is but the essence of the concept of property," the general rule is that a permanent injunction will issue once infringement and validity have been adjudged, absent a sound reason for denial. *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1246–47, 9 USPQ2d 1913, 1929 (Fed.Cir.1989) (citation omitted). It is the "standards of the public interest, not the requirements of private litigation, [that] measure the propriety and need for injunctive relief." *Roche Prods., Inc. v. Bolar Pharm. Co., Inc.*, 733 F.2d 858, 865–66, 221 USPQ 937, 942 (Fed.Cir.1984). We have stated that a court may decline to enjoin infringement of a patent when "a patentee's failure to practice the patented invention frustrates an important public need for the invention." *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1547, 35 USPQ2d 1065, 1071 (Fed.Cir.1995). The important public needs that would justify the unusual step of denying injunctive relief, however, have typically been related to public health and safety. We see no such public need in this case, and we therefore see no reason to depart from the general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances. In the event that the trial court does not find the claims of the '656 patent invalid or unenforceable and re-enters a final judgment in favor of Xerox, the court should grant Xerox's motion for injunctive relief.