DEGELMAN INDUSTRIES LTD., Plaintiff,

v.

PRO–TECH WELDING AND FABRI-CATION, INC., and Michael P. Weagley, Defendants.

No. 06–CV–6346T.

United States District Court, W.D. New York.

Dec. 23, 2008.

Christopher E. Blank, Alpa Vinodchandra Patel, Hiscock & Barclay LLP, Rochester, NY, Michael A. Oropallo, Gabriel M. Nugent, Hiscock & Barclay, LLP, Syracuse, NY, for Plaintiff.

Donald W. O'Brien, Jr., Woods Oviatt Gilman LLP, Rochester, NY, for Defendants.

## DECISION and ORDER

MICHAEL A. TELESCA, District Judge.

### INTRODUCTION

Plaintiff Degelman Industries Ltd., ("Degelman") brings this action pursuant

to federal patent law, (codified at 35 U.S.C. § 100 et. seq.), claiming that defendants Pro-tech Welding and Fabrication, Inc., ("Pro–Tech") and Michael P. Weagley are infringing upon Degelman's United States Patent no. 6,845,576 (issued on January 25, 2005) (hereinafter "the '576 Patent"), as well as United States Design Patent nos. 478,097, 519,128, 519,129. The '576 Patent, entitled "Materials Moving Blade," generally discloses a pushing blade that is attached to heavy equipment vehicles (such as a bulldozer), for the purpose of moving earth, debris or snow. The blade is fitted with sidewalls that extend forward from each end of the blade, which sidewalls prevent the material being moved from escaping past either end of the blade. The purported novelty of the blade disclosed in the '576 Patent is that, *inter alia,* it is fitted with a unique strengthening gusset that is designed to strengthen the connection between the blade and the sidewalls, and is also designed to prevent snow or other material from getting caught or stuck under the gusset.

Pursuant to *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) ("*Markman*"), the parties request that the court construe the disputed claim terms of the '576 Patent. The following constitutes my construction of the claim terms in dispute.

## BACKGROUND

The '576 Patent discloses a materials moving blade that is particularly adapted for moving snow. According to the inventors, prior art blades that were used for the purpose of plowing snow suffered from several deficiencies, including weak connections between the blade and sidewalls, which could result in damage to the sidewalls due to the weight and force of snow being moved. Efforts to strengthen the connection between the blade and the sidewalls often created additional problems, because reinforcing bars used for that pur-

pose could catch and trap snow, ice, or debris, thus requiring the operator of the equipment to stop plowing, and either mechanically (by forcefully striking the blade against the ground) or manually remove snow, ice, or debris from the blade. This solution resulted in delay, and potential damage to the blade.

To solve the problems of weak connections between the sidewalls and the blade, and trapped snow, ice, or debris, the inventors of the '576 Patent designed a "support gusset" (also referred to as a "reinforcing gusset" or "strengthening gusset") that was shaped in a manner that would allow it to both strengthen the connection between the blade and its sidewalls, and also shed the material being plowed so as to prevent clogging. '576 Patent col. 2, lns. 22–23 ("Yet another object of the present invention is to provide a gusset for strengthening a joint between substantially perpendicular members of a heavy equipment blade which easily sheds materials being plowed, for example, snow, ice and/or earth where the materials being moved or plowed contact only a contiguous forward facing surface to facilitate disengagement of the material from the blade . . . .")

The inventors purportedly accomplished their goal by creating a substantially conic-shaped gusset that has a contiguous, angled surface extending from the blade to the attached sidewall. The gusset has a larger base portion attached to the blade and sidewall, and a smaller apex attached only to the sidewall. According to the inventors, because the gusset has a contiguous surface, with the apex of the gusset extending outward from blade, material being plowed is more easily shed from the gusset area, and therefore, the material being plowed does not accumulate or get trapped in the area near the gusset.

## DISCUSSION

In 1996, the United States Supreme Court held in *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 116 S.Ct. 1384, that "construction of a patent, including terms of art within its claim, is exclusively within the province of the court." Because the meaning of claim terms is often "the central issue of patent litigation . . . ." and because "most aspects of trial hing[e] on this determination . . . a conscientious court will generally endeavor to make this ruling before trial." *Loral Fairchild Corporation v. Victor Company of Japan, Ltd.*, 911 F.Supp. 76, 79 (E.D.N.Y.1996) (Rader, J. sitting by designation) (citing *Markman v. Westview Instr., Inc.*, 52 F.3d 967 (Fed.Cir.1995) (internal quotation omitted)).

■■■ In determining how the terms of a claim are to be construed, "the court should look first to . . . intrinsic evidence. i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996) (citing *Markman*, 52 F.3d at 979). "Such intrinsic evidence is the most significant source of legally operative meaning of disputed claim language." *Vitronics*, 90 F.3d at 1582. "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term[,]" and in such circumstances, reliance on extrinsic evidence, such as expert testimony is "improper." *Vitronics*, 90 F.3d at 1583.

■■■ In considering the intrinsic evidence, the court looks first to the words of the claims, including the claims not asserted, to define the scope of the patented invention. *Vitronics*, 90 F.3d at 1582. The words in the claim are given their ordinary and customary meaning, unless the patentee chooses to define the words in a specific manner. *Vitronics*, 90 F.3d at 1582. If the patentee chooses to be his or her own lexicographer, the specified definitions assigned to particular words or terms must be found either in the specification or the file history. *Vitronics*, 90 F.3d at 1582. Accordingly, it is always necessary to review the specification to determine if any specialized meanings have been given to terms used in the patent. *Vitronics*, 90 F.3d at 1582. Finally, with respect to intrinsic evidence, the prosecution history of the patent may often be of "critical significance" in defining claim terms. *Vitronics*, 90 F.3d at 1582. The prosecution history often contains express representations made by the applicant regarding the scope or limitations of the claims, and therefore is a valuable resource in determining the meanings of words used in the claims. *Vitronics*, 90 F.3d at 1582.

## CONSTRUCTION OF THE DISPUTED CLAIM TERMS OF THE '576 PATENT

The '576 Patent contains 8 claims, two of which are independent, and all of which contain claim terms that are disputed by the parties. The claims are set forth in their entirety below, with the disputed claim terms highlighted.

Claim 1 of the '576 Patent provides:

A materials moving blade for attachment to a vehicle comprising: a main blade defined by first and second ends, a top edge, a bottom edge and front and back surfaces; a first sidewall and a second sidewall attached to and extending substantially perpendicular from the respective first and second ends of the main blade; a first support gusset extending from a larger base portion connected to the front surface of the main blade to a smaller apex portion connected to the first sidewall; a second support gusset extending from a larger base portion connected to the front surface of the main blade to a smaller apex portion

connected to the second sidewall; and *wherein the first and second gusset are each formed as a conic section delineated by a side support dege [sic] connected to one of the first and second sidewalls and a base edge connected to the main blade.*

'576 Patent col. 6, lns. 44–62.

Claim 2 of the '576 Patent discloses:

The materials moving blade for attachment to a vehicle as set forth in claim 1, *wherein the side support edge and the base edge of each of the conic section gussets are contiguously joined to the respective first and second sidewall and the main blade.*

'576 Patent col. 6, lns. 63–67.

Claim 3 of the '576 Patent discloses:

The materials moving blade for attachment to a vehicle as set forth in claim 2, *wherein each of the first and second conic section gussets depends downward from the base portion attached to a substantially middle portion of the main blade to the apex portion of the gussets attached adjacent a lower edge of the respective first and second sidewalls.*

'576 Patent col. 7, lns. 1–7.

Claim 4 of the '576 Patent discloses:

The materials moving blade for attachment to a vehicle as set forth in claim 3, *wherein each of said conic section gussets comprise a plurality of adjacent surfaces extending from a larger end attached to the main blade to a smaller end attached to the sidewall.*

'576 Patent col. 7 lns. 8–12.

Claim 5 of the '576 Patent discloses:

A materials moving box blade comprising: a main blade defined by first and second ends, a top edge, a bottom edge and front and back surfaces; a first sidewall and a second sidewall attached to and extending substantially perpendicular from the respective first and second ends of the main blade; a first support gusset extending from a larger base portion connected to the front surface of the main blade to a smaller apex portion connected to the first sidewall; a second support gusset extending from a larger base portion connected to the front surface of the main blade to a smaller apex portion connected to the second sidewalls; and *wherein the first and second gusset are each formed as conic section delineated by a side support edge connected to one of the first and second sidewalls and a base edge connected to the main blade.*

'576 Patent col. 7, ln. 13—col. 8, ln. 6.

Claim 6 of the '576 Patent discloses:

The materials moving box blade as set forth in claim 5, *wherein the side support edge and the base edge of each of the conic section gussets are contiguously joined to the respective first and second sidewall and main blade.*

'576 Patent col. 8, lns. 12.

Claim 7 of the '576 Patent discloses:

The materials moving box blade as set forth in claim 6, *wherein each of the first and second conic section gussets depends downward from the base portion attached to a substantially middle portion of the main blade to the apex portion of the gussets attached adjacent a lower edge of the respective first and second sidewalls.*

'576 Patent col. 8, lns. 11–16.

Claim 8 of the '576 Patent discloses:

The materials moving box blade as set forth in claim 7, *wherein each of said conic section gussets comprise a plurality of adjacent surfaces extending from a larger end attached to the main blade to a smaller end attached to the sidewall.*

'576 Patent col. 8, lns. 18–22.

I discuss the disputed claim terms *seriatim.*

I. "wherein the first and second gusset are each formed as a conic section delineated by a side support edge connected to one of the first and second sidewalls and a base edge connected to the main blade."

 Claims 1 and 5 of the '576 Patent disclose in relevant part the use of a "first and second" gusset, each of which is formed as a "conic section delineated by a side support edge" that is connected to a sidewall, and a "base edge" that is connected to the main blade.

Plaintiff contends that this claim element should be construed to provide that "[e]ach gusset is defined by the gusset's connection to the front surface of the blade and connection to a sidewall delineated by a side support edge connected to one of the first and second sidewalls and a base edge connected to the main blade." Joint Claim Construction Statement at p. 3. Defendants contend that the term "conic section" as used in this claim element should be construed as describing a gusset that is formed in the shape of "a partial cone including a contiguous outer surface with a radius of curvature ...." *Id.* Defendants further contend that the gusset must have "a base portion attached to and extending from the front surface of the main blade to an apex portion." *Id.* Finally, defendants contend that the base edge of the gusset is the boundary of the base portion of the gusset along the front surface of the main blade, and the side edge is the boundary of the gusset along the sidewall. *Id.*

Although the constructions proposed by the parties are widely divergent, the core dispute between the parties is whether or not the gusset disclosed in the claim must have "a radius of curvature." According to the defendants, the '576 Patent discloses only a gusset that has a substantially "conic" shape. Because a conic shape is curved, the defendants argue that the disclosed gusset must have a curved shape.

Although plaintiff does not offer a competing construction of the term "conic section gusset", and instead attempts to define the gusset by identifying where it is located and how it is affixed to the main blade and sidewalls, Degelman nevertheless argues that there is no limitation in the '576 Patent requiring that the conic section gusset be curved. Accordingly, plaintiff contends that the gusset may be curved or flat.

While it is true that the gusset disclosed in the '576 Patent is repeatedly referred to as a "conic" shaped gusset, and that a conic shape has a curve, I find that because the inventors of the '576 Patent acted as their own lexicographers, the gusset disclosed in the Patent is not exclusively limited to a conic shape, but instead may be formed of surfaces having a curve, or surfaces that are substantially planar.

The '576 Patent explains that "[e]ach gusset ... is formed as a substantially conic section, i.e., a partial cone having a base portion ... attached to and extending radially from the front surface ... of the main blade ... to an apex portion ... spaced therefrom and attached on the inner surface of the sidewalls ...." '576 Patent col. 5, lns. 26–30. An object that is "conic" is cone shaped (Webster's Third New International Dictionary 479 (2002)) and a "cone" is "a solid bounded by a circular or other close planed base and the surface formed by line segments joining every point of the boundary of the base to a common vertex." Webster's Third New International Dictionary 474 (2002). Accordingly, an item that is conic has a curved surface.

Had the inventors of the '576 Patent provided no further explanation of the shape of the gusset disclosed, the gusset could rightfully be limited to an object that has a curved surface. The inventors, however, explained that in at least one embodiment of the invention:

the contiguous outer surface ... of the conic section gusset ... is formed by a first and second *substantially planar surfaces* ... aligned at an angle with respect to one another. The first and second planar surfaces ... are angled with respect to one another along a bend ... which extends substantially the length of the conic section from the base portion ... connected to the main blade ... to the apex portion ... connected to the first sidewall ....

'576 Patent col. 5, lns. 45–52 (emphasis added). By defining the "conic section gusset" as capable of being formed by "substantially planar surfaces", the inventors revealed that the gusset disclosed in the '576 Patent need not be limited to curved gussets, but could also include gussets that are formed by flat surfaces.[1] Because the inventors disclosed a gusset with "substantially planar surfaces", and because no disclosure in the patent or representation found in the file history precludes a finding that the gusset may be formed by planar surfaces, I find that the gusset disclosed in the '576 Patent may have either a curved or flat surface.

Defendants contend that the term conic section gusset cannot be construed to include gussets with planar surfaces because the plaintiff disclaimed such a construction during the prosecution of the '576 Patent, and because such a construction would render the patent invalid in light of prior art. I find, however, that the plaintiff did not disclaim a gusset comprised of planar surfaces angled to form a contiguous surface when joined to a blade and sidewall,

and consideration of invalidity is at this point, premature.

The defendants contend that the plaintiff disclaimed a gusset comprised of joined, planar surfaces when it acquiesced to the patent examiner's rejection of an original claim claiming, *inter alia,* "a first support gusset extending from a larger base portion connected to the front surface of the main blade to a smaller apex portion connected to the first sidewall" and an identical second support gusset attached to a second sidewall. According to the defendants, this claim was rejected in light of two prior art references that disclosed such gussets, and the plaintiff was allowed only to claim "conic shaped" gussets. Such an interpretation of the patent examiner's action, however, and its consequences, is unwarranted.

The gusset disclosed in rejected Claim 1 of the original patent application did not specify any particular shape. Accordingly, it can not be said that rejection of that gusset constituted a rejection of any gusset comprised of planar surfaces angled towards each other forming a contiguous surface facing the material being moved. Indeed, the examiner allowed the plaintiff to claim a conic shaped gusset, with the understanding that a conic shaped gusset could be comprised of planar surfaces. Accordingly, the fact that the patent examiner, without objection from the plaintiff, rejected a claim that did not specify the shape of the gusset does suggest that the examiner rejected conic shaped gussets comprised of planar surfaces, or that the plaintiff disclaimed such a gusset. *See*

1. The Court notes that a literal interpretation of the term "substantially planar" gusset could suggest that the surfaces of the gusset are not flat. As a matter of semantics, an object is either flat or it isn't-there is no other alternative. Therefore, an object that is only "substantially" or "mostly" flat is, in reality, not flat at all, and therefore must have a

curve. Under the rules of claim construction, however, this court is not prepared to adopt such a mechanistic approach to claim interpretation. Rather, the Court is satisfied that one skilled in the art of the design and manufacture of materials moving blades would understand the term "substantially planar" to include a completely flat surface.

*Computer Docking Station Corp. v. Dell, Inc.,* 519 F.3d 1366, 1375 (Fed.Cir.2008) (any purported disavowal of a permissible interpretation must be "clear and unambiguous.") (citations omitted).

With respect to invalidity of Claims 1 and 5 of the '576 Patent, the defendants contend that wedge-shaped gussets are well known in the art, and therefore, an interpretation of these claims that would include gussets with planar surfaces would render the claims invalid as anticipated. I find, however, that such contentions about the validity or invalidity of the '576 Patent are premature at this stage of the litigation. *Rhine v. Casio, Inc.,* 183 F.3d 1342, 1347 (Fed.Cir.1999) (consideration of patent validity premature at claim construction phase of litigation); *see also Xerox v. 3Com Corp.,* 61 Fed.Appx. 680, 683 (Fed. Cir.2003) ("decision with respect to claim construction does not constitute an implicit ruling that the construed claims are valid") (citing *Rhine* ).

Finally, such a construction of the term "conic section gusset" is in accord with the drawings disclosed in the '576 Patent. Figure 9 of the '576 Patent depicts a gusset that is formed by two planar surfaces. Because the specification and drawings of the '576 Patent reveal that the conic section gusset may be formed of substantially planer surfaces, I find that term "wherein the first and second gusset are each formed as a conic section delineated by a side support edge connected to one of the first and second sidewalls and a base edge connected to the main blade" refers to first and second gussets that may be formed of either curved or flat surfaces, and that each gusset has a base portion attached to the front surface of the main blade, and side edges that are attached to the respective sidewall.

II. wherein the side support edge and the base edge of each of the conic section gussets are contiguously joined to the respective first and second sidewall and the main blade

■ Claims 2 and 6 of the '576 Patent disclose in relevant part gussets which are "contiguously joined" to the main blade and respective sidewalls. Plaintiff contends that the term "contiguously joined" means that there is "a contiguous seam between the respective sidewall and the main blade and the respective edges of the 'gusset' " Plaintiff's Claim Construction Brief at p. 18. Defendants contend that the term "contiguously joined" means that "[t]he side edge and the base edge of each of the first and second conic section gussets touch (along the edge) respectively the sidewalls and the main blade and are continuously joined thereto." Joint Claim Construction Statement at p. 14.

I find that the best definition of the term "contiguously joined" comes from the patent itself. Specifically, the '576 Patent provides that:

> The conic section gusset ... is provided with a contiguous outer surface ... and an outer supporting edge ... which is joined to the respective front surface ... of the main blade ... and the inner surface of the sidewall. ... The attachment between the main blade ... the sidewall ... and the gusset ... is complete, i.e., it defines a contiguous, usually welded gusset seam attaching the entire outer edge ... of the conic section gusset to the box blade .... Thus, the gusset ... in conjunction with the sidewall ... and main blade ... presents an uninterrupted or unbroken face to any material being pushed or moved[.]

'576 Patent col. 5, lns. 34–44. Based on the description of how the gusset is attached to the blade and sidewall in the preferred embodiment, and the patent's

teaching of providing a contiguous surface to prevent debris from getting caught or trapped by the gusset, it is clear that the gusset must be joined to the main blade and sidewalls in a manner that provides for an uninterrupted and unbroken surface between the gusset and the blade and sidewall. Accordingly, I find that the term "contiguously joined" means that the gusset is joined to the main blade and sidewall in a manner that provides for an uninterrupted and unbroken surface between the gusset, blade, and sidewall. Pursuant to this construction, the gusset may, but need not physically touch the blade or sidewall, provided that the gusset is joined to those members in such a manner that it creates a contiguous, unbroken surface between the gusset, blade, and sidewall.

III. wherein each of the first and second conic section gussets depends downward from the base portion attached to a substantially middle portion of the main blade to the apex portion of the gussets attached adjacent a lower edge of the respective first and second sidewalls.

■ Claims 3 and 7 of the '576 Patent provide in relevant part that each of the gussets angles downward along the sidewall from the base which is attached to the main blade. The parties agree that this claim requires that the apex of each gusset be lower than the base portion of the gusset. Joint Claim Construction Statement at p. 22. The claims also provide that the gussets be attached to "a substantially middle portion of the main blade." '576 Patent col. 7, lns. 4–5, col. 8. lns. 13–14. Plaintiff contends that the term "substantially middle portion" refers to an area along the main blade that is substantially in between the top and bottom edges of the blade. Joint Claim Construction Statement at p. 22. Defendants, contend,

however, that the term "substantially middle portion" refers to a location on the main blade that is equidistant from the top and bottom edges of the main blade. *Id.*

I find no reason to limit the term "substantially middle portion" to a location that is in the exact center of the top and bottom edges of the main blade. The '576 Patent does not define the term "substantially middle portion", and therefore, the court is required to interpret the term in accordance with understanding of a person skilled in the art of the design and manufacture of materials moving blades. There is no suggestion in the record that a person skilled in the art would understand the term "substantially middle portion" of the main blade to mean the exact geometric middle of that blade. Rather, I find that a person skilled in the art of the design and manufacture of materials moving blades would understand that the limitation requiring the gussets to be attached to a location that is substantially in the middle of the main blade would not limit the placement of the gusset to only the exact middle of the blade, but would allow the gusset to be placed in any location that is essentially in the middle portion of the blade.

Nor is there any language in the '576 Patent itself suggesting that such a limitation should be adopted. There is no indication that the gussets would work only it they were attached to the geometric middle of the main blade, or that the inventors required the gussets to be attached only at the exact middle point of the main blade. Accordingly, I find that the term "substantially middle portion" of the main blade refers to a location that is at, or close to the middle point of the main blade in between the top and bottom edges of the blade.

IV. wherein each of said conic section gussets comprise a plurality of adjacent surfaces extending from a larger end attached to the main blade to a smaller end attached to the sidewall

■ Claims 4 and 8 of the '576 Patent disclose in relevant part gussets which are comprised of a plurality of adjacent surfaces extending from a base attached to the main blade to a smaller end attached to the sidewall. While the parties agree that this claim term discloses a gusset formed by a "plurality of adjacent surfaces provided with a respective number of angles between them" (*See* Joint Claim Construction Statement at p. 26), the defendants contend that any gusset formed from a plurality of surfaces must take the shape of a partial cone. *Id.* The basis for defendants' argument is that the gussets disclosed in the '576 Patent are limited to conic shaped gussets, and therefore, all gussets disclosed in the claims, even gussets that are comprised of a multitude of adjacent surfaces, must take the shape of a partial cone.

As explained above, however, I find that the inventors of the '576 Patent did not limit the shape of the gussets disclosed in the patent to cone shaped objects. Rather, I found that because the inventors disclosed the use of "substantially planer" gusset surfaces, the gussets disclosed could have flat surfaces. Because the gussets may be formed of curved or flat surfaces, or, as in the case of Claims 4 and 8, a multitude of curved or flat surfaces, there is no basis for limiting the shape of the gussets to a cone shape. I therefore find that Claims 4 and 8 disclose gussets which are comprised of a plurality of adjacent surfaces provided with a respective number of angles between them.

## CONSTRUCTION OF THE DESIGN PATENTS

35 U.S.C. § 171 provides in relevant part that "[w]hoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor ...." Patents granted pursuant to this section are known as "design patents", and are directed to the ornamental appearance of an article of manufacture. *PHG Technologies, LLC v. St. John Companies, Inc.,* 469 F.3d 1361, 1366 (Fed.Cir.2006). Plaintiff asserts that defendants have infringed on three of its design patents: U.S. Patents 478, 097, 519, 128, and 519, 129.

Unlike utility patents, design patents contain only a single claim, and claim only the ornamental design disclosed in the drawings set forth in the patent. Accordingly, in attempting to construe the claim of a design patent, the Federal Circuit Court of Appeals has recently instructed district courts that the "preferable course" will ordinarily be "not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 679 (Fed.Cir.2008). While the Court of Appeals noted that the determination of the level of detail in construing a design patent claim is within the district court's discretion, the Court also stated that "it should be clear that the [district] court is not obligated to issue a detailed verbal description of the design if it does not regard verbal elaboration as necessary or helpful." *Id.*

In the instant case, I find that a detailed verbal description of the ornamental designs set forth in the 478, 097, 519, 128, and 519, 129 patent's would not be useful or beneficial. Accordingly, I construe each of the design patents at issue as follows.

■ The 478,097 Patent is construed as the overall visual impression of the ornamental design of a snow moving appara-

tus with gusset as set forth in the drawings of the patent.

■ The 519, 128 Patent is construed as the overall visual impression of the ornamental design of a gusset used in a snow moving apparatus as set forth in the drawings of the patent.

■ The 519, 129 Patent is construed as the overall visual impression of the ornamental design of a snow moving apparatus with gusset as set forth in the drawings of the patent.

### CONCLUSION

For the reasons stated herein, I construe the disputed claim terms of the '576 Patent, and the claims of the design patents at issue as set forth above. Plaintiff's motion to strike and/or file a sur-reply is denied.

ALL OF THE ABOVE IS SO ORDERED.